G. W. BROWN ET AL. V. WILLIAM CLARK ET AL.

No. 1882. Decided March 3, 1909.

**Religious Societies—Church Tribunals—Title of Property.**

The General Assembly of the Cumberland Presbyterian Church having pro-
vided for the, union of that body with the Presbyterian Church of the United
States, a controversy arose over the right to certain church property of the
Cumberland Church in the city of Jefferson, between those claiming to control
it as the local Session of the Presbyterian Church of the United States and
members of such congregation organizing themselves in refusing assent to
the act of union and, represented by their local Session of the Cumberland
Presbyterian Church claiming succession to the property as the society to
which the title was conveyed. Construing the constitution of the General As-
sembly of the Cumberland Presbyterian Church as approved by its presbyter-
ies in 1885, with reference to its power to effect such act of union, it is held:

(1). The decision of the General Assembly that there was no material
difference in the articles of faith of the two churches was within the authority
so conferred upon them, and binding upon the courts in determining the ques-
tion of the succession to property. (Pp. 331, 332.)

(2). By such constitution individual members of congregations had no
participation in the government of the church except in the selection of its
ruling elders, the entire control being vested in its governing bodies or courts,
the Church Session, Presbytery, Synod and General Assembly; and a provision
that "the jurisdiction of these courts is limited by the express provisions of
the constitution," refers to the matters falling within the domain of each
respectively; it did not preclude an implied authority in the General Assembly
to do such acts as were necessary to a performance of the duties imposed on
it though they were not specifically authorized. (Pp. 332, 333.)

(3). The authority conferred on the General Assembly embraced the sov-
ereign power of the whole church to do whatever the entire membership could
have done if assembled for that purpose, including the determination of its
own power to enter into the act of union, the substantial agreement of the
two confessions of faith, and questions concerning the admission of negroes
to the church. (Pp. 333, 334.)

(4). The action of the General Assembly was, by the terms of the con-
stitution, conclusive on the civil courts of all questions upon which the right
to the church property depended, where it was acquired with no special trust
or limitation, the title depending solely on what body should be identified as
being the church to which the deed was made. (P. 334.)

Error to the Court of Civil Appeals for the Sixth District, in an
appeal from Marion County.

Clark and others sued Brown and others and defendants recovered
judgment. Plaintiffs appealed, and, on the judgment being reversed
and rendered for appellants, appellees obtained writ of error.

*M. B. Templeton, Geo. T. Todd, John M. Gaut* and *Finley, Knight & Harris,* for plaintiffs in error.—The declaration of the General Assembly of the Cumberland Presbyterian Church that met at Decatur, Illinois, in May, 1906, that union of the two churches had been accomplished, is an ecclesiastical question and is binding on the civil courts.   Mack v. Kime, 129 Ga., 1; Fussell v. Hail, 233 Ill., 73; Watson v. Jones, 13 Wallace, 679; Brundage v. Dearborn, 34 Circuit Court of Appeals, 304; M. E. Church v. Harris, 47 Atl., 118; Baptist Church v. Fort, 93 Texas, 223; Nance v. Busby, 91 Tenn., 303; McBride v. Porter, 17 Iowa, 203; McGinnis v. Watson, 41 Pa., 9.

*F. H. Prendergast* and *W. C. Caldwell,* for defendants in error.— The court erred in holding that the declarations of the General Assembly of the Cumberland Presbyterian Church that met at Decatur, Ill., in May, 1906, that union of the two churches has been accomplished, is an ecclesiastical question, and is binding on the civil courts. Watson v. Avery, 2 Bush (Ky.), 332; Smith v. Pedigo, 32 L. R. A., 842; Bean v. Heasley, 24 L. R. A., 623; Roshi's Appeal, 69 Pa. St., 462; Brundage v. Deandorff, 55 Fed. Rep., 846; Farrara v. Vasconcellos, 31 Ill., 25; Reorganized Church v. Church of Christ, 60 Fed., 937.

The court erred in view of the admitted facts, in not rendering judgment for the plaintiff for the land sued for, because the confessions of faith of the two churches are different, and it is a diversion of the property of the Cumberland Church to devote said property to the Presbyterian Church.   Peace v. Christian Church, 20 Texas Civ. App., 85; Nance v. Busby, 18 S. W., 874; Bean v. Hensley, 24 L. R. A., 615; Smith v. Pedigo, 32 L. R. A., 838; Beach on Trust & Trustees, sections 339-340; Wm. Strong's Lectures on Church Polity, pages 50-58; Free Church of Scotland Appeals, House of Lords Cases.

The scheme was one of merger and absorption, and void.   Associate Reformed Church v. Trustees of Theological Seminary, 4 N. J. Ch. R. (3 Green), 77-101; General Assembly of Free Church of Scotland and others v. Lord Overtoun and others, Law Reports, Appeal Cases, 1904, 695; Judge Buff's Opinion, at Vincennes, Indiana, in Westfall v. Myers; Opinion Texas Court of Civil Appeals in Cumberland Presbyterian Church v. Presbyterian Church in the U. S. A.; Chancellor Bullock's Opinion in First Cumberland Presbyterian Church of Jackson, Tenn., v. Keith.

The so-called union and merger are inoperative and void in toto, because not authorized by the constitution of the Cumberland Presbyterian Church and in conflict with it.   The constitution is the supreme law of the church, and as such is binding upon all of its judicatories, or courts, as well as upon the membership.   Watson v. Avery, 2 Bush., 332, 339; Bear v. Heasley, 98 Mich., 279, 24 L. R. A., 623; Bunn v. Gorgas, 41 Pa., 446; Krecker v. Shirey, 163 Pa., 634, 29 L. R. A., 481; Gartin v. Penick, 5 Bush., 110; Kerr's Appeal, 89 Pa., 97; Deaderick v. Lampson, 11 Heis., 523; Watson v. Garvin, 54 Mo., 379; Presbyterian Church v. Wilson, 14 Bush., 278, and other authorities too numerous to mention.

The express restriction found in section 25 is equivalent to an

affirmative prohibition against the usurpation or any power not specially given. Page v. Allen, 58 Pa., 338; Norment v. Smith, 5 Yerg. (Tenn.), 272; Lynn v. Polk, 8 Lea (Tenn.), 169; People v. Draper, 15 N. Y., 543.

The inquiry, whether or not the alleged union and merger were in conformity to the constitution of this church, is not ecclesiastical; it is the "same question that might arise with respect to any voluntary association in which its constitution was intended to be mutually binding upon all its members, and to protect and preserve the society by recalling it to a recognition of its own organic law." Hatfield v. Delong, 156 Ind., 211; Note to Kearns v. Hawley, 68 Am. St. Rep., 856.

Self-destruction or self-surrender, such as is necessarily involved in the scheme in question, is in direct conflict with the language used. All presumptions and intendments are in favor of the continuance of life, both civil and ecclesiastical; and all constitutions, whether of the one or the other, are presumed to be made for the perpetuation of life and not with a view to its destruction. Lynn v. Polk, 8 Lea (Tenn.), 167; 4 N. J. Ch. R. (3 Green), 96-97; Koerner Lodge v. Grand Lodge, 146 Ind., 639; McFadden v. Murphy, 149 Mass., 341; Mason v. Finch, 28 Mich., 286.

The power to amend or change the constitution, conferred by section 60 thereof, does not authorize the General Assembly and Presbyteries, with which that power is lodged, to destroy the constitution, or the church, by amendment or otherwise. Nor does it authorize them to perform any act by which the constitution is abandoned and the identity and integrity of the church are destroyed. Such power can exist only when expressly conferred. Railway Co. v. Atherton, 18 Wall., 233.

The constitution of the Presbyterian Church in the United States of America is an instrument of delegated powers, specific and limited. Moores' Dig. Presb. Assembly (1860), 453, 465; Bairds' Dig., 715, 722; Discussions by Dabney, vol. 2, 274-5, 287-8; Gartin v. Penick, 5 Bush., 115; Kerr's Appeal, 89 Pa., 97; Watson v. Avery, 2 Bush., 333. The constitution of the Cumberland Presbyterian Church is likewise an instrument of delegated powers, specific and limited; and, besides being so in its nature and other provisions, the powers of its courts are expressly restricted to those enumerated by the language, "the jurisdiction of these courts is limited by the express provisions of the constitution," found in section 25.

Committees and ruling bodies of voluntary societies exercise not sovereign but constitutional power. They can neither nullify nor suspend the constitution, but must conform their acts to it. Presbyterian Mut., etc., v. Allen, 106 Ind., 593; Bauer v. Sampson Lodge, 102 Ind., 262; Supreme Council v. Garrigus, 104 Ind., 133; Supreme Council v. Forsinger, 125 Ind., 52; Koerner Lodge v. Grand Lodge, 146 Ind., 639; Mason v. Finch, 28 Mich., 286; McFadden v. Murphy, 149 Mass., 341.

The provisions of section 60 of the constitution of the Cumberland Presbyterian Church as to the manner of making amendments are mandatory, and must be strictly followed in order to accomplish a

legal change. Lamb v. Cain, 129 Ind., 486; Bear v. Heasley, 98 Mich., 279; State v. Foraker, 46 Ohio, 677; Rottnan v. Bartling, 22 Neb., 375; Schlichter v. Keiter, 156 Pa., 119; Prohibitory Amendment Cases, 24 Kan., 709; Re Constitutional Convention, 14 R. I., 651; Philomath College v. Wyatt (Org.), 26 L. R. A., 78, citing Collier v. Frierson, 24 Ala., 109; State v. Timme, 54 Wis., 318; Koehler v. Hill, 60 Iowa, 543.

The courts in many of the cases correctly speak of members · of religious associations as being in the relation of contract, toward each other, and as being bound in that relation by the constitution and confession of faith of the particular association. Bear v. Heasley, 98 Mich., 279, citing numerous cases; Gartin v. Penick, 5 Bush., 119-120; Presbyterian Church v. Wilson, 14 Bush., 278; Kuns v. Robertson, 154 Ill., 401.

Constitutional authority must be shown by those asserting it. Kerr's Appeal, 89 Pa., 97; Schnorr's Appeal, 67 Pa., 138, 5 Am. Rep., 415; Watson v. Avery, 2 Bush., 332; Gartin v. Penick, 5 Bush., 110, also Mr. Redfield's note to this case, 9 Am. L. Reg., N. S., 210, 221, and Chase v. Cheney, 10 Am. L. Reg., N. S., and Mr. Fuller's note to latter case, page 308; Bear v. Heasley, 98 Mich., 279.

Differences in doctrine and polity render movement void. Civil courts will consider differences in doctrine in order to ascertain whether or not the so-called union and merger involved in the present case are allowable in law, and to decide the true ownership of the property in question. General Assembly of the Free Church of Scotland v. Lord Overtoun, Law Reports, Appeal Cases, 1904, p. 612.

Nothing that the General Assembly of the Cumberland Presbyterian Church has done, or could have done, precludes civil courts from inquiring and deciding for themselves, where civil rights are involved, whether or not the doctrines of the two churches in question are the same substantially, and whether or not the action taken in reference to the so-called union and merger was authorized by the constitution of the Cumberland Presbyterian Church. Hatfield v. DeLong, 156 Ind., 209; Smith v. Pedigo, 145 Ind., 361; O'Donovan v. Chatard, 97 Ind., 423; Grimes v. Harmon, 35 Ind., 201, 254; Bouldin v. Alexander, 15 Wallace, 131; Perry v. Wheeler, 12 Bush., 541; Mason v. Finch, 28 Mich., 286; Krecker v. Shirey, 163 Pa., 534, 29 L. R. A., 476; Prickett v. Wells (Mo.), 24 S. W., 52-53; Pounder v. Ash, 36 Neb., 564; Lemp v. Raven, 113 Mich., 375; Bird v. St. Mark's Ch., 62 Iowa 567; Kerr's Appeal 89 Pa. 97; McAuley's Appeal, 77 Pa., 397; Harmon v. Dreher, 2 Speer's Eq., 87; Jennings v. Scarbrough, 56 N. J. Law, 401; Smith v. Nelson, 18 Vt., 511; Mount Helen Baptist Church v. Jones, 79 Miss., 488-582; Bear v. Heasley, 98 Mich., 279, 24 L. R. A., 615, 621-24; Bridges v. Wilson, 11 Heisk., 458; Deaderick v. Lampson, 11 Heisk., 523; Nance v. Busby, 91 Tenn., 304; Travers v. Abbey, 104 Tenn., 665; Rodgers v. Burnett, 108 Tenn., 173; Watson v. Garvin, 54 Mo., 377; Ferraria v. Vasconcellos, 31 Ill., 35; Watson v. Avery, 2 Bush., 332; Associate Reform Church v. Trustees of Theological Seminary, 4 N. J. Ch., R. (3 Green), 77; Gartin v. Penick, 5 Bush., 110; Mc Fadden v. Murphy, 149 Mass., 341; Baker v. Ducker, 79 Cal., 374.

Religious trusts may be created by gift or conveyance to certain persons in trust, as in the present instance, for the use and benefit of a particular religious congregation, body, or society by its denominational name; all interest therein will be lost by those who voluntarily leave it and go into another organization, and courts of equity will protect it for those who remain members of the original organization. Smith v. Pedigo, 145 Ind., 361, 32 L. R. A., 839, 846; Mt. Zion Baptist Church v. Whittmore, 83 Iowa, 147, 13 L. R. A., 198; Park v. Champlin, 96 Iowa, 55, 31 L. R. A., 141, 144; Hale v. Everett, 63 N. H., 9, 16 Am. Rep., 82; Schnorr's Appeal, 67 Penn. St., 138, 5 Am. Rep., 415; Finley v. Brent, 87 Va., 103, 11 L. R. A., 214; Nance v. Busby, 91 Tenn., 305; Bridges v. Wilson, 11 Heisk., 458; Mount Helm Baptist Church v. Jones, 79 Miss., 488; Dr. Dabney's Discussions, vol. 2, p. 288.

A change from one denomination to another, though different in name only, is a change, or a breach, that results in the loss of property held in the former denomination. Godfrey v. Walker, 42 Ga., 562; Deaderick v. Lampson, 11 Heisk., 523; Bridges v. Wilson, 11 Heisk., 459; McKinney v. Griggs, 5 Bush., 401, 96 Am. Dec., 361; Newman v. Procter, 10 Bush., 318; Brown v. Mason, 80 Ky., 443; Finley v. Brent, 87 Va., 103, 11 L. R. A., 214; also numerous cases cited in Hale v. Everett (N. H.), 16 Am., 114, and in note on page 509 of 4 Am. and Eng. Dec. in Equity.

The rule is universal that going into another organization is, in law and necessarily, an abandonment of all previous property rights by those who go, and that those who maintain the original organization thereby become the sole beneficiaries, as the only persons then answering the description of the deed. Finley v. Brent, 87 Va., 103, 108, 11 L. R. A., 214; Mount Helm Baptist Church v. Jones, 79 Miss., 488; Godfrey v. Walker, 42 Ga., 562; McKinney v. Griggs, 5 Bush., 401, 96 Am. Dec., 361; Bridges v. Wilson, 11 Heisk., 459; First Baptist Church v. Fort, 93 Texas, 223; Harper v. Straws, 14 B. Monroe, 48; Free Church of Scotland Case, Law Reports, Appeal Cases, 1904, page 611; also numerous other cases collated in note in 4 Am. & Eng. Dec. in Equity, 509-10.

Whatever else may be said of the so-called union and merger we insist confidently that the property involved in this cause belongs to the local congregation, or to that part of it adhering to the Cumberland Presbyterian Church, as it existed when the deed was made, and that it can not be taken from them by any means whatsoever. The conveyance is to and for the benefit of the particular local church as such, and without reference to its connection with any other ecclesiastical body. The particular property is for the use of the particular local church for a particular purpose, and only those who are constituent parts of the particular local church have any interest in the particular property. Gibson v. Armstrong, 7 B. Monroe, 489; Deaderick v. Lampson, 11 Heisk., 529; Bridges v. Wilson, 11 Heisk., 458; Rodgers v. Burnett, 108 Tenn., 173; Newman v. Proctor, 10 Bush., 318; Brown v. Monroe, 80 Ky., 443; Gartin v. Penick, 5 Bush., 112; Harper v. Straws, 14 B. Monroe, 39; Watson v. Garvin, 54 Mo., 343; Mount Helm Baptist Church v. Jones, 79 Miss. 488;

Finley v. Brent, 87 Va., 103, 11 L. R. A., 214; McBride v. Porter, 17 Iowa, 207; Godfrey v. Walker, 42 Ga., 562; Mt. Zion Baptist Church v. Whitmore (Iowa), 13 L. R. A., 205, and citations; Baker v. Ducker, 79 Cal., 365; Houseman v. Allen, 129 Cal., 131, and citations; Hendrickson v. Shotwell, 1 N. J. Eq. (Saxton), 577; True Ref'd Dutch Church v. Iserman, 64 N. J. Law, 506; Rose v. Isaac Christ, 193 Pa., 13. See especially, elaborate note, 4 Am. and Eng. Dec. in Equity, 510-12.

Where a congregation is divided, as in the present instance, the civil court will, upon its own investigation, award the local property to those members, whether a minority or majority, who adhere to the original organization and are acting in harmony with its own laws; and the laws, usages, customs, principles, and doctrines, which were accepted among them before the dispute began are the standard for determining the controversy. Smith v. Pedigo, 145 Ind., 361; Rodgers v. Burnett, 108 Tenn., 183; App v. Lutheran Congregation, 6 Pa., 210; Roshi's Appeal, 69 Pa., 462; Ferraria v. Vanconcellos, 31 Ill., 25; Christian Church v. Church of Christ, 219 Ill., 503; Harper v. Straws, 14 B. Monroe, 48; Baker v. Fales, 16 Mass., 488; Bouldin v. Alexander, 15 Wall., 131; Free Church of Scotland Case, Law Reports, Appeal Cases, 1904, p. 612; Gartin v. Penick, 5 Bush., 110, 9 Am. L. Reg., 213; McGinnis v. Watson, 41 Pa., 13; Schnorr's Appeal, 67 Pa., 138, 5 Am. Rep., 415.

MR. JUSTICE BROWN delivered the opinion of the court.

This suit was instituted in the District Court of Marion County by William Clark, W. F. Jones, Jas. Hasty, and Ed B. McDonald, claiming that they constituted the church session of the Cumberland Presbyterian Church at the city of Jefferson, Texas, against G. W. Brown, W. S. Haywood, J. C. Preston and W. B. Ward, who claim to be the church session of the Presbyterian Church in the United States of America at Jefferson, Texas. The object of the suit was to recover from the defendants certain lots which were deeded by different persons at different times to trustees for the Cumberland Presbyterian Church at Jefferson, Texas. The deeds recite the payment of a valuable consideration by the church and convey the lots to the trustees named for the Cumberland Presbyterian Church, the deeds being general warranty.

The Cumberland Presbyterian Church had its origin as an organization about the year 1810. The Presbyterian Church in the United States of America had churches in Kentucky and Tennessee with Presbyteries organized therefor. In about the year 1801 some of the preachers disagreed with the mother church on the doctrine of fore-ordination and predestination, etc., and began to preach a different doctrine. It is unnecessary to detail what transpired during the time that this controversy was going on; the result was that in the year 1810 a number of the preachers that were so engaged organized the Cumberland Presbyterian Church. The church made rapid progress and development, and in the course of a few years overtures were made between it and the mother church for a reunion, but they were

not able to agree until in the year 1904, when a plan was adopted which was accomplished in 1906 and the two churches were reunited.

In the year 1883 the general assembly of the Cumberland Presbyterian Church adopted a constitution for that church, which was approved by the Presbyteries and was accepted by the churches generally. We here copy such portions of that constitution as are thought to be relevant to the questions involved in this litigation:

"25. The Church Session exercises jurisdiction over a single church; the Presbytery, over what is common to the ministers, church sessions, and churches within a prescribed district; the Synod, over what belongs in common to three or more Presbyteries, and their ministers, church sessions, and churches; and the General Assembly, over such matters as concern the whole church; and the jurisdiction of these courts is limited by the express provisions of the constitution. - Although each court exercises exclusive original jurisdiction over all matters specially belonging to it, the lower courts are subject to review and control of the higher courts in regular gradation."

"27. The Church Session is charged with maintaining the spiritual government of the church, for which purpose it is its duty to inquire into the doctrines and conduct of the church members under its care; to receive members into the church; to admonish, suspend, or excommunicate those found delinquent, subject to appeal. The Church Sessions shall observe and carry out the injunctions of the higher courts."

"29. A Presbytery consists of all the ordained ministers and one ruling elder for each church within a certain district."

"31. The Presbytery has the power to examine and decide appeals, complaints, and references brought before it in an orderly manner; to receive, examine, dismiss, and license candidates for the holy ministry; to receive, dismiss, ordain, install, remove and judge ministers; to review the records of the church sessions, redress whatever they may have done contrary to order, and take effectual care that they observe the government of the church. Presbytery shall see that the injunctions of the higher courts are obeyed."

"37. The Synod has power to receive and decide all appeals, complaints, and references regularly brought up from the Presbyteries, to review the records of the Presbyteries, and to redress whatever they may have done contrary to order; to take effectual care that Presbyteries observe the government of the church, and that they obey the injunctions of the higher courts; to create, divide, or dissolve Presbyteries, when deemed expedient; to appoint ministers to such work, proper to their office, as may fall under its own particular jurisdiction; in general, to take such order with respect to the Presbyteries, church sessions, and churches under its care as may be in conformity with the principles of the government of the church and of the word of God, and as may tend to promote the edification of the church; to concert measures for promoting the prosperity and enlargement of the church within its bounds; and, finally, to propose to the General Assembly such measures as may be of common advantage to the whole church."

"40. The General Assembly is the highest court of this church,

and represents in one body all the particular churches thereof. It bears the title of the General Assembly of the Cumberland Presbyterian Church, and constitutes the bond of union, peace, correspondence and mutual confidence among all its churches and courts. . . . It shall meet as often as once every two years . . . and shall consist of commissioners from the Presbyteries."

"41. Twenty or more of these commissioners, at least ten of whom shall be ministers, shall constitute a quorum."

"43. The General Assembly shall have the power to receive and decide all appeals, references and complaints regularly brought before it from the inferior courts; to bear testimony against error in doctrine and immorality in practice, injuriously affecting the church; to decide in all controversies respecting doctrine and discipline. . . . To receive under its jurisdiction other ecclesiastical bodies whose organization is conformed to the doctrine and order of this church."

"60. Upon the recommendation of the General Assembly, at a stated meeting, by a two-thirds vote of the members thereof, the confession of faith, catechism, constitution, and rules of discipline, may be amended or changed when a majority of the Presbyteries, upon the same being transmitted for their action, shall approve thereof."

"111. It is a prerogative of these courts, ministerially, to determine controversies of faith and questions of morals, to set down rules and directions for the better ordering of the public worship of God and government of his church, . . . and authoritatively to determine the same, which determinations are to be received with reverence and submission."

In the year 1903 the General Assembly of the Cumberland Presbyterian Church and also the General Assembly of the Presbyterian Church in the United States of America each appointed a committee which was to constitute a joint committee on union and reunion of the two bodies. After deliberation the joint committee agreed upon a basis of reunion, which was to be upon the basis of the confession of faith as reformed in 1903 of the Presbyterian Church of the United States of America. Each committee reported to its General Assembly that there was no material difference in the articles of faith of the two churches and recommended a reunion of the two bodies of Christians. In 1906, after going through the regular and constitutional routine of being submitted to the presbyteries, the report of the committee was adopted in regular manner by a majority of the presbyteries and by the General Assembly of the Cumberland Presbyterian Church. There was at all times a strong minority which opposed the reunion, and when the General Assembly of the Cumberland Presbyterian Church adopted the report and declared the union completed the dissenting commissioners in attendance upon that General Assembly held a meeting and organized another General Assembly of the Cumberland Presbyterian Church. Much dissatisfaction prevailed in the churches of the Cumberland Presbyterians, and in the church at the city of Jefferson, Texas, there was a difference of opinion upon the subject of reunion among its members. Those who opposed the reunion instituted this action, claiming that they constituted the Session of the Cumberland Pres-

byterian Church at Jefferson. The defendants in the action claimed to be the session of the Presbyterian Church in the United States of America and were in possession of the property and claimed that by the union the property had been transferred to the Presbyterian Church in the United States of America. The case was tried before the judge without a jury and a judgment was rendered in favor of the defendants—those who claimed under the Presbyterian Church in the United States of America. The Court of Civil Appeals of the Sixth Supreme Judicial District reversed that judgment and rendered judgment in favor of the plaintiffs below.

In the investigation of this case we have had the benefit of decisions of three courts, each of which exhaustively and ably treated the same facts and the legal questions arising thereon. Mack v. Kime, 129 Ga., 1; Fussell v. Hail, 134 Ill. App., 620; Wallace v. Hughes, Ct. App. Ky., not published. We have also had the aid of able counsel who have carefully and thoroughly briefed all the questions presented by this record and in oral argument have given helpful assistance towards a correct decision. For convenience the different churches will be designated as the Presbyterian Church and the Cumberland Church.

In the history of the Cumberland Church, its separation from the mother church, its progress and growth, with the many efforts that have been made at reunion, there is much interesting matter which we deem it unnecessary to discuss at length in this opinion; therefore we shall only refer to those facts as they may become relevant and important to the decision of any particular point of law that may arise in the investigation.

The principal question in this case is, did the General Assembly of the Cumberland Church have authority to consummate the reunion and union of that church with the Presbyterian Church?

The first objection presented by defendants in error is that the confession of faith of the Cumberland Church was so antagonistic to that of the Presbyterian Church that no such union could be properly entered into by the General Assembly of the Cumberland Church. We shall not undertake to examine the conflicting views of counsel upon this question nor will we inquire whether the action of the General Assembly of the Cumberland Church was correct upon the facts of the case, for that was clearly a question committed to the Assembly by that provision of the constitution which authorized it, with the approval of two-thirds of the presbyteries, to change the confession of faith of that church, and that action having been taken whereby it was declared that the change made in the confession of faith of the mother church removed all obstacles to "reunion and union" of the two bodies—that decision is final upon the civil courts. Watson v. Jones, 13 Wall., 679; Mack v. Kime, 129 Ga., 1; Fussell v. Hail, 134 Ill. App., 620; Wallace v. Hughes, Kentucky App. In Watson v. Jones, the Supreme Court of the United States stated that the property in question was not charged with any special trust, but was purchased in the ordinary way for the use of a local church, and said: "In the case of an independent congregation we have pointed out how this identity, or succession, is to be ascertained, but

in case of this character we are bound to look at the fact that the local congregation is itself but a member of a much larger and more important religious organization, and is under its government and control, and is bound by its orders and judgments. There are in the Presbyterian system of ecclesiastical government, in regular succession, the presbytery over the session or local church, the Synod over the presbytery, and the General Assembly over all. These are called, in the language of the church organs, 'judicatories,' and they entertain appeals from the decisions of those below, and prescribe corrective measures in other cases. In this class of cases we think the rule of action which should govern the civil courts, founded in a broad and sound view of the relations of church and State under our system of laws, and supported by a preponderating weight of judicial authority is that whenever the questions of discipline, or of faith, or ecclesiastical rule, custom, or law have been decided by the highest of these church judicatories to which the matter has been carried, the legal tribunals must accept such decisions as final, and as binding on them in their application to the case before them." This investigation will proceed upon the assumption that the decision of the church courts was correct.

It is claimed that the ecclesiastical courts by the constitution of the Cumberland Church had no powers except such as are expressly given in the constitution. The assertion is based upon the following language in section 25 of that instrument: "And the jurisdiction of these courts is limited by the express provisions of the constitution." No provision is made in the constitution for the individual members of the congregations to participate in the government of the church, except that the members of each local church may select the ruling elders of that congregation. Four courts were created by the constitution to which all authority of the church was confided, and section 25 of that constitution distributed the powers of the church among the four courts, defining the sphere within which each court could exercise the power committed to it. The language quoted above and relied upon by the defendants in error is found in section 25 of the constitution, being the last clause of the sentence which defines the jurisdiction of the several courts. One effect of that language was to distinctly mark the boundaries of the jurisdiction of each court so as to prevent the encroachment of one upon the jurisdiction given to another. For example, the church session is given authority over matters which belong to one church, and to this it is limited. It had no power to deal with that which belongs to the whole church. The General Assembly was given jurisdiction over all matters which concerned the whole church; that is, all of its members and churches. The original jurisdiction of the General Assembly is limited by the language in question to those things which belong to the churches in general and it could not exercise authority over any matter which concerned only one church except upon appeal. The sphere of action and subjects allotted to each is limited by the express terms of section 25. While the language has the effect to place the limitation stated upon the different courts, it is not correct to say that it had no other effect, for we are of opinion that each court must find in

the constitution some express authority given for the performance of
any act by it. But it would be a strained and unnatural construc-
tion to hold that by this language the court must find an express
provision which definitely authorizes each act done in the exercise
of its powers; that is, that it should have the effect to exclude all im-
plied authority and all inherent power that resides in a court by reason
of its organization and the duties imposed upon it. It is elementary
that the grant of specific power, or the imposition of a definite duty
upon any person or court, confers by implication the authority to do
whatever may be necessary in order to execute the power conferred
or to perform the duty imposed, and the implied power is as much
a part of the statute as if it were written into the body of the act
itself. (Suth. Stat. Const., sec. 334.) If, therefore, there was any
duty imposed upon the General Assembly, or if there was any authority
given to it by the constitution which required or authorized the
union of the two churches, then the authority was conferred by the
express provision which imposed the duty or conferred the authority
from which the implication arises.

As before stated, all of the authority and power of the member-
ship of the church was confided to the different judicatories that
were created by the constitution. To the General Assembly was com-
mitted the supreme legislative, judicial and executive power of the
church. It was declared to be the highest court of the church and
was authorized to pass all necessary laws, rules and regulations for the
whole church; indeed, it was empowered to alter the articles of faith
of the church. The General Assembly had authority to adjudicate
and determine all matters which concern the whole church and was
the court of last resort with appellate jurisdiction over all others.
It had the authority to dissolve any one of the other judicatories in
order to enforce the discipline of the church. It was declared by the
constitution that the General Assembly represents "in one body all
the particular churches thereof," and again, it is said that it con-
stitutes "the bond of union, peace, correspondence and mutual confi-
dence among all its churches and courts." In the General Assembly
all of the churches are united, as it is said, it is the bond of union
and it is the means by which the peace of the congregations is preserved
and the mutual confidence is cultivated and encouraged. It would be
difficult to make a more ample expression of authority conferred and
duty imposed than is found in the language used in this constitution.
We conclude that the General Assembly of the Cumberland Church
was the embodiment and expression of the sovereign power of the
whole church and its membership, and that it could do for the
churches and for the membership whatever they could have done if
they had been assembled for that purpose.

The General Assembly of the Cumberland Church had authority
to determine, from the provisions of the constitution, whether it had
the power to enter into the union with the Presbyterian Church and
having decided that it had such authority and having acted upon that
decision the civil courts have no power to review that action. In
Watson v. Jones, 13 Wall., 733, Judge Miller discussed that question
and shows conclusively that the determination of an ecclesiastical

court as to its jurisdiction over a given question is as conclusive upon the civil courts as is its decision of the question when made.

The defendants in error object to the union because of antagonism in the confession of faith of the two churches. It is insisted that, notwithstanding the modification of its confession of faith by the Presbyterian Church, the obnoxious doctrine pervades the articles of faith which renders the union between the two churches improper. The General Assembly, the highest court of the church to which the decision of these questions is committed, decided that all practical differences between the articles of faith of the two churches had been eliminated and there existed no reason why the union should not be effected. That court had exclusive jurisdiction of the question, and, having decided it, there is no ground for action by this court.

Defendants in error also object that under the rules and regulations of the Presbyterian Church negroes are admitted under certain circumstances to participate in its courts and public meetings, which is not allowed by the rules and regulations of the Cumberland Church, therefore, the union could not be properly effected by the General Assembly. This was also a question exclusively for the consideration of the General Assembly of the Cumberland Church, and having been adjusted by that court according to its judgment in manner to the best interest of the church it is likewise beyond the power of this court to revise.

What effect did the union between the two churches have upon the property which is here in controversy? This is perhaps the only question in the case of which this court has jurisdiction. The deed for the property was made to the trustees of the Cumberland Presbyterian Church at Jefferson, Texas. It expressed no trust nor limitation upon the title. The property was purchased by the church and paid for in the ordinary way of business, and there is not attached to that property any trust, either express or implied. It follows, we think, as a natural and proper conclusion, that the church to which the deed was made still owns the property, and that whatever body is identified as being the church to which the deed was made must still hold the title. The Cumberland Presbyterian Church at Jefferson was but a member of and under the control of the larger and more important Christian organization, known as the Cumberland Presbyterian Church, and the local church was bound by the orders and judgments of the courts of the church. (13 Wall., 727.) The Jefferson Church was not disorganized by the act of union; it remained intact as a church, losing nothing but the word "Cumberland" from its name. Being a part of the Cumberland Presbyterian Church, the church at Jefferson was by the union incorporated into the Presbyterian Church in the United States of America. The plaintiffs in error and those members who recognize the authority of the Presbyterian Church in the United States of America are entitled to the possession and use of the property sued for.

It is ordered that the judgment of the Court of Civil Appeals be reversed and that the judgment of the District Court be affirmed, and that plaintiffs in error recover cost of courts.

*Reversed and judgment of District Court affirmed.*