**Opinion issued January 7, 2014.**



In The

# Court of Appeals

For The

# First District of Texas

————————————

## NO. 01-10-00861-CV

————————————

**WINDWOOD PRESBYTERIAN CHURCH, INC., A TEXAS NON-PROFIT CORPORATION, Appellant**

**V.**

**THE PRESBYTERIAN CHURCH (U.S.A.) AND PRESBYTERY OF NEW COVENANT, INC., Appellees**

**On Appeal from the 281st District Court**
**Harris County, Texas**
**Trial Court Case No. 2008-53684**

## O P I N I O N

We vacate and withdraw our opinion and judgment of August 30, 2012, and issue this opinion and judgment in their stead. In light of the new opinion,

appellant's motion for en banc reconsideration is dismissed as moot. *See Brookshire Bros., Inc. v. Smith*, 176 S.W.3d 30, 33 (Tex. App.—Houston [1st Dist.] 2004, pet. denied).

This case involves a property dispute between a local church and its parent denominational church. The local church, Windwood Presbyterian Church, Inc. ("Windwood") filed suit against The Presbyterian Church (U.S.A.) ("PCUSA") and Presbytery of New Covenant, Inc. ("the Presbytery") (collectively, "the denominational church"), seeking a declaration that the denominational church had no legal, equitable, or other interest in the property on which Windwood's church campus is located. The denominational church moved for summary judgment, contending that PCUSA is a hierarchical church, and, as such, its decision on church property matters is entitled to deference by civil courts. The trial court granted summary judgment, and this appeal followed. We reverse and remand to the trial court.

## BACKGROUND

Windwood Presbyterian Church, Inc. is a non-profit corporation that maintains the civil affairs for Windwood Presbyterian Church, which is located at 1055 Spring-Cypress Road in Houston, Harris County, Texas. Windwood was incorporated and its first trustees were elected in 1971. The 1971 articles of incorporation pledge the assets of the corporation to the establishment and

maintenance of a place of religious worship. In the articles, Winwood trustees were given the power to buy, sell, and mortgage property for the church. The articles further provide that the members of the corporation could assign other duties to the trustees, "provided they do not infringe upon the powers and duties of the Session or of the Board of Deacons as defined in the Book of Church Order, Presbyterian Church in the United States."

Windwood was at the time of its incorporation a member of Presbyterian Church of the United States ("PCUS"), which, because of a split at the time of the Civil War, was comprised of churches in the southern part of the United States. The PCUS did not have any trust provisions in its constitution at the time of Windwood's incorporation. However, in 1983, the PCUS merged with the churches from the northern part of the United States to form the Presbyterian Church as it exists today, the PCUSA. Windwood has been a member of the PCUSA since the merger of the two churches in 1983.

As a part of the reunification, PCUSA amended its church constitution—the Book of Order—to provide:

> All property held by or for a particular church, a presbytery, a synod, the General Assembly, or the Presbyterian Church (U.S.A.), whether legal title is lodged in a corporation, a trustee or trustees, or an unincorporated association, and whether the property is used in programs of a particular church or of a more inclusive governing body or retained for the production of income, is held in trust nevertheless for the use and benefit of the Presbyterian Church (U.S.A.).

The Book of Order also contains a provision permitting a local church, within eight years of the formation of the PCUSA, to opt out of the trust provision if it had not been subject to a similar provision before the formation of the PCUSA. Windwood never exercised this right.

The property at issue in this case was given to Windwood by warranty deeds dated December 27, 2000 and May 12, 2003, after Windwood joined the PCUSA, and more than eight years after the amendments to the Book of Order. Neither deed references a trust in favor of PCUSA.

On October 1, 2007, Windwood amended its articles of incorporation to add a declaration that all real property held by the corporation constituted a trust held for the benefit and enjoyment of the members of the local church only.

In 2008, Windwood filed suit against PCUSA and the Presbytery seeking a declaration that (a) the denominational church has no legal, equitable, or other interest in the property; (b) no trust interest of any kind exists in favor of the denominational church, or if such a trust was created, it has been revoked; (c) all property held by or titled in Windwood's name is held by its ownership pursuant to its 2007 Articles of Incorporation and the terms of the deeds; and (d) that neither PCUSA nor the Presbytery has any right to determine the ownership of the property.

PCUSA moved for summary judgment, contending that (1) PCUSA is a

4

hierarchical church, and as such (2) Texas courts must defer to the governing church authority for resolution of property issues. Windwood responded that (1) there are fact questions about whether PCUSA is a hierarchical church, and, even if it is (2) the trial court should apply "neutral principles" of law in determining ownership of the property, and (3) under "neutral principles" PCUSA did not have a legally cognizable interest in the property. The trial court granted the PCUSA's motion, and this appeal followed.

## THE FIRST AMENDMENT AND CHURCH PROPERTY DISPUTES

To resolve the issues in this case, we first consider the historical development of church property disputes and how they are affected by the First Amendment.

The First Amendment to the United States Constitution, applicable to the states through the Fourteenth Amendment, *Cantwell v. Connecticut,* 310 U.S. 296, 303, 60 S. Ct. 900, 903 (1940), provides that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof." U.S. CONST. AMEND. I. Following this constitutional mandate, civil courts may not intrude into inherently "religious" or "ecclesiastical" matters. *See Westbrook v. Penley*, 231 S.W.3d 389, 398–99 (Tex. 2007). In Texas, this doctrine has been referred to as one of "ecclesiastical abstention" or "ecclesiastical exemption." *See Lacy v. Bassett,* 132 S.W.3d 119, 123 (Tex. App.—Houston [14th Dist.] 2004, no

pet.); *see also Patton v. Jones*, 212 S.W.3d 541, 555 n.13 (Tex. App.—Austin 2006, no pet.); *Schismatic & Purported Casa Linda Presbyterian Church v. Grace Union Presbytery, Inc.*, 710 S.W.2d 700, 703 (Tex. App.—Dallas 1986, writ ref'd n.r.e.). The ecclesiastical-abstention doctrine stands for the proposition that the First Amendment prohibits civil courts from exercising jurisdiction over matters concerning "theological controversy, church discipline, ecclesiastical government, or the conformity of the members of the church to the standard of morals required of them." *Serbian E. Orthodox Diocese v. Milivojevich*, 426 U.S. 696, 713–14, 96 S. Ct. 2372, 2382 (1976). Similarly, the First Amendment prohibits civil courts from resolving church property disputes on the basis of religious doctrine or practice.

### *Watson v. Jones and Hierarchical Deference Review*

For over 100 years, church property disputes were governed by the seminal case of *Watson v. Jones,* 80 U.S. (13 Wall.) 679 (1871). The Court in *Watson* declared that, when asked, civil courts have jurisdiction to resolve secular church disputes over ownership of church property:

> [T]he courts when so called on must perform their functions as in other cases.

> Religious organizations come before us in the same attitude as other voluntary associations for benevolent or charitable purposes, and their rights of property, or of contract, are equally under the protection of the law, and the actions of their members subject to its restraints.

6

*Id.* at 714.

To decide how to resolve such disputes, the Court drew a distinction between "congregational" or "independent" churches and more hierarchical churches. To determine property disputes in congregational churches or those "governed solely within," "the rights of such bodies to the use of the property must be determined by the ordinary principles which govern voluntary associations." *Id.* at 724–25.

However, in a hierarchical form of church organization, the Court said, the local church "is itself part of a large and general organization of some religious denomination, with which it is more or less intimately connected by religious views and ecclesiastical government." *Id.* at 726. In such instances, "we are bound to look at the fact that the local congregation is itself but a member of a much larger and more important religious organization, and is under its government and control, and is bound by its orders and judgments." *Id.* at 726–27.

The Court then held that:

All who unite themselves to such a body do so with an implied consent to this government, and are bound to submit to it. But it would be a vain consent and would lead to the total subversion of such religious bodies, if any one aggrieved by one of their decisions could appeal to the secular courts and have them reversed. It is of the essence of these religious unions, and of their right to establish tribunals for the decision of questions arising among themselves, that those decisions should be binding in all cases of ecclesiastical cognizance, subject only to such appeals as the organism itself provides for. *Id.* at 729. Thus, the Court in *Watson* adopted an

approach to resolving property disputes in hierarchical churches that has since been described as "hierarchical deference." Under the rule of hierarchical deference, a civil court must first determine the organizational structure of the church and then, if it determines that the church is hierarchical, it must defer to the decision of the highest judicatory body of the hierarchical church.

### *Post-1969 Cases and the "Neutral Principles of Law" Review*

In 1969, the Supreme Court indicated that neutral principles of property law might be used to resolve church property disputes so long as application of those principles did not draw state courts into religious controversies. *Presbyterian Church in the United States v. Mary Elizabeth Blue Hull Mem'l Presbyterian Church*, 393 U.S. 440, 89 S. Ct. 601 (1969) involved a property dispute between two Georgia churches and the Presbyterian Church in the United States, with which they were affiliated. The two local churches had withdrawn from the general church over doctrinal disputes. 393 U.S. at 442, 89 S. Ct. at 602. The local churches sought a judicial determination that the general church had substantially departed from the tenets of faith that existed at the time of the local church's affiliation and that, as a result, the implied trust through which church property is held for the general church had terminated. 393 U.S. at 443–44, 89 S. Ct. at 603. In resolving the dispute, the Georgia Supreme Court agreed with the local churches

that the "substantial abandonment" standard applied and submitted to the jury the question of whether the general church organization had substantially abandoned the tenets of faith and practice as they existed at the time of affiliation. 159 S.E.2d 690, 695 (Ga. 1968), *rev'd,* 393 U.S. 440, 89 S. Ct. 601 (1969). In so doing, the Georgia court permitted a jury examination into tenets of faith of the parent church.

Citing *Watson,* the Supreme Court reversed, explaining that Georgia's "departure-from-doctrine" approach was unconstitutional because it required the civil court to determine matters "at the very core of a religion—the interpretation of particular church doctrines and the importance of those doctrines to the religion." 393 U.S. at 450, 89 S. Ct. at 607. The Court remanded the case, holding that the Georgia court needed to develop a method of resolving church property disputes that did not draw state courts into religious controversies. In so holding, the Supreme Court noted that "there are neutral principles of law, developed for use in all property disputes, which can be applied without 'establishing' churches to which property is awarded." *Id.* at 449, 89 S. Ct. 606.

In a concurring opinion to *Maryland and Virginia Eldership of Churches of God v. Church of God at Sharpsburg, Inc.*, 396 U.S. 367, 90 S. Ct. 499 (1970), a case dismissed for lack of a federal question, Justice Brennan cautioned that the hierarchical deference approach should be used "only if the appropriate church

governing body can be determined without the resolution of doctrinal questions and without extensive inquiry into religious policy." *Id.* at 370, 90 S. Ct. 501. Justice Brennan also noted that a state could adopt *any* of several approaches for resolving church property disputes, including (1) *Watson*'s hierarchical deference approach, (2) the use of "neutral principles of law" under which civil courts can determine ownership by studying deeds, reverter clauses, and general state corporations law, and (3) the passage of special statutes governing church property arrangements. *Id.* at 368–70, 90 S. Ct. 500–01.

In *Jones v. Wolf*, 443 U.S. 595, 99 S. Ct. 3020 (1979), the majority of the court adopted Justice Brennan's position that the hierarchical deference view was one of several possible methods for resolving church property disputes. Once again, the Court emphasized that state courts must not resolve church property disputes on the basis of religious doctrine and practice. Subject to that restriction, the Court said that the First Amendment does not otherwise dictate that a state must follow a particular method in resolving church property disputes. A state may adopt "*any* one of various approaches for settling church property disputes so long as it involves no consideration of doctrinal matters, whether the ritual and liturgy of worship or the tenets of faith." *Id.* at 602 (quoting *Maryland & Va. Churches*, 396 U.S. at 368, 90 S. Ct. at 500 (Brennan, J., concurring)) (emphasis in original).

One acceptable approach, referred to as the "neutral principles" approach, permits the state courts to examine legal documents of title, state statutes governing the holding of church property, and the secular provisions of church documents, including the terms of the local church charters and the provisions of the constitution of the general church concerning the ownership and control of church property. *Jones*, 443 U.S. at 603, 99 S. Ct. 3025. A neutral-principles approach, the Court explained, "relies exclusively on objective, well-established concepts of trust and property law familiar to lawyers and judges. It thereby promises to free civil courts completely from entanglement in questions of religious doctrine, polity, and practice." *Id.*

***Texas Cases Involving Church Property Disputes***

In *Brown v. Clark*, 116 S.W. 360, 363 (Tex. 1909), the court cited *Watson* in resolving a dispute between rival factions of a local Presbyterian church. The court carefully avoided any ecclesiastical issues, including whether the local church possessed the authority to enter into a union with the Presbyterian denominational church. *Id.* at 364. The court then considered "perhaps the only question in the case of which this court has jurisdiction," i.e., how the union with the denominational church affected the possession and control of the local church property. *Id.* The court examined the deed, which was in the name of the local church, but recognizing that the local church "was but a member of and under the

11

control of the larger and more important Christian organization," held that only those members of the local church loyal to the denominational church were entitled to use and possession of the property. *Id*. at 365.

Several courts since *Brown* interpreted it as adopting the hierarchical deference approach. *See Green v. Westgate Apostolic Church*, 808 S.W.2d 547, 551 (Tex. App.—Austin 1991, writ denied) ("Appellate courts have consistently followed the deference rule in deciding hierarchical church property disputes since the Texas Supreme Court adopted the rule in *Brown*."); *Schismatic & Purported Casa Linda Presbyterian*, 710 S.W.2d at 707 (holding Texas law "has consistently followed the deference rule" and declining to adopt the "neutral principles" application).

However, in *Masterson v. Discese of Northwest Texas*, No. 11-0332, ___S.W.3d. ___, 2013 WL 4608632, at *11 (Tex. Aug. 30, 2013), which we discuss in detail below, the Supreme Court of Texas put the issue to rest by stating, "We hold that Texas courts should use the neutral principles methodology to determine property interests when religious organizations are involved. Further, to reduce confusion and increase predictability in this area of the law where the issues are difficult to begin with, Texas courts must use only the neutral principles construct." *Id.*

## PROPRIETY OF SUMMARY JUDGMENT

The denominational church moved for summary judgment, arguing:

Under *Jones v. Wolf*, there are two recognized approaches from which each state may choose: "hierarchical deference" and a "neutral principles" approach. *See Jones v. Wolf*, 443 U.S. 595 (1979); *Watson v. Jones*, 80 U.S. 679 (1871). Texas has explicitly adopted the "hierarchical deference" approach. *Green v. Westgate Apostolic Church*, 808 S.W.2d 547, 551 (Tex. Ct. App. 1991). Consequently, there is only one issue before this Court, and that is whether Texas courts have held that the PCUSA is a hierarchical church, since under the "hierarchical deference" approach, the PCUSA and the Presbytery are entitled to a summary judgment.

In three issues on appeal, Windwood contends the trial court erred in granting summary judgment because (1) there is a fact question about whether PCUSA is a hierarchical church; (2) the trial court erred by not applying the "neutral principles" standard for resolving this dispute; and (3) PCUSA failed to establish that is has a "legally cognizable" trust in the property. Because we find Windwood's second issue dispositive, we address need only address it.

### *Standard of Review*

We review the trial court's decision to grant summary judgment de novo. *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005). To prevail on a summary judgment motion, the movant must demonstrate that there are no genuine issues of material fact and that it is entitled to judgment as a matter of law. TEX. R. CIV. P. 166a(c); *City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 678 (Tex. 1979) (movant must conclusively prove all "essential elements of his cause

of action or defense as a matter of law"). In deciding whether there is a disputed material fact issue precluding summary judgment, we must take evidence favorable to the nonmovant as true, indulge every reasonable inference in favor of the nonmovant, and resolve any doubts in the nonmovant's favor. *Dorsett*, 164 S.W.3d at 661; *Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 548–49 (Tex. 1985). If the movant shows that it is entitled to judgment as a matter of law, the burden shifts to the nonmovant to present evidence to raise a material fact issue that precludes summary judgment. *See Centeq Realty, Inc. v. Siegler*, 899 S.W.2d 195, 197 (Tex. 1995).

### *Hierarchical Deference or Neutral Principles—An Analysis of Masterson*

In its second issue, Windwood contends the trial court erred by not applying neutral principles of law to resolve this dispute. We agree based on the Texas Supreme Court's holding in *Masterson v. Diocese of Northwest Texas*, 2013 WL 4608632.

In *Masterson*, the Texas Supreme Court considered a property dispute between a local Episcopal church and the national Episcopal church and diocese, from which a majority of the local church had voted to withdraw. 2013 WL 4608632, at *1. The local church held title to the property through a Texas non-profit corporation, which made no reference to a trust in favor of the national church or diocese. *Id.* at *2. However, a canon of the national church provided that "[a]ll real and personal

14

property held by or for the benefit of any Parish, Mission or Congregation is held in trust for [the national church]." *Id.* at *15. Due to doctrinal differences with the national church, the local church voted to disassociate from the national church, and the corporation that held the property of the local church amended its bylaws to remove all references to the national church, withdraw its membership with the national church, and revoke any trusts that may have been imposed on its property. *Id.* at *2.

The diocese of the national church filed suit against the leaders of withdrawing members and the corporation seeking a declaratory judgment that the local church's property could not or used for any purpose other than the mission of the national church and that the property was held in trust for the national church. *Id.* at *2.

The national church moved for summary judgment alleging that it was a hierarchical church, that its cannons required that all property of a local parish be held in trust for the national church, and that when congregations of hierarchical churches split, Texas courts must defer to the decision of the national church's superior hierarchical authority in determining which faction of the church constitutes the "true" church, which would be entitled to the property held in trust for the national church. *Id.* at *3. The national church's motion asserted that "the sole legal issue [for the trial court] is whether or not the Episcopal Church is hierarchical." *Id.* It did not plead or assert as grounds for summary judgment that it was entitled to the

property based on an application of neutral principles of law. *Id.*

The trial court granted the national church's motion for summary judgment, which the court of appeals affirmed. *Id.* at *3. The supreme court, however, disagreed by first deciding that neutral principles of law should be used to determine property interests when religious organizations are involved, and stating that "Texas courts must use only the neutral principles construct." *Id.* at *11. In so holding, the court recognized that its earlier opinion in *Brown*, which many courts had considered to be an application of hierarchical deference, was actually following the neutral principles construct because it considered which entity held title to the property. *Id.* at *10.

The court then considered the propriety of the summary judgment in light of its holding that church property disputes should be resolved by applying neutral principles of law. *Id.* at *11. The court concluded that the record conclusively established that the Episcopal Church was hierarchical, and that the trial court had properly deferred to the bishop's determination as to members of the vestry and ecclesiastical matters of church governance. *Id.* at *12. However, the court also concluded that applying deference to those issues did not necessarily determine who owned the property. *Id.* The court then held that, because the national church's motion for summary judgment was based on its argument that the bishop's determination of property ownership should be afforded deference, and that the

16

national church did not plead or urge as grounds for summary judgment that it was entitled to the property on the basis of neutral principles, the trial court erred in granting the national church's motion for summary judgment. *Id.* Therefore, the supreme court reversed the court of appeals' judgment and remanded the case to the trial court.[1] *Id.*

### *Application of Masterson to This Case*

In this case, as in *Masterson*, the denominational church's motion was based solely on the contention that this property dispute should be resolved by applying the hierarchical deference approach and deferring to governing church authorities on the issue. Indeed, the denominational church's motion states that "there is only one issue before this Court, and that is whether Texas courts have held that the PCUSA is a hierarchical church, since under the 'hierarchical deference' approach, the PCUSA and the Presbytery are entitled to a summary judgment." Because this was the only ground urged for summary judgment, under *Masterson*, the denominational church's summary judgment must be reversed and remanded to the trial court. "Because the

---

[1] After holding that the summary judgment must be reversed, the *Masterson* court went on to address several issues that would "feature prominently on retrial" in order to "provide guidance to the trial court," even though those issues were not necessary to the resolution of the appeal. *Id.* Specifically, the court addressed (1) who controlled the corporation, and (2) who controlled the property. *Id.* at *13–14. In so doing, the court recognized that whether a trust was established under Texas law and whether that trust was irrevocable would be issues on remand. *Id.*

deference methodology is not to be used to determine this type dispute, the [national church's] pleadings and motion will not support summary judgment." *Id.*

The denominational church nonetheless argues that "the summary judgment record is broad enough for the court to affirm the trial court's grant of summary judgment under both neutral principles and *Masterson*." Specifically, the denominational church points out that, in its response to summary judgment, Windwood requested that the trial court apply neutral principles of law to determine the property issue and attached as summary judgment evidence the documents of title which would allow the trial court to do so. *Masterson* also had summary judgment evidence showing documents of title, references by the nonmovant to neutral principles, and a reply by the national church arguing that it was entitled to summary judgment under both the deference and neutral principles analyses. *See id.* at *3. Despite the fact that the neutral principle analysis was discussed in the summary judgment briefing and the evidence included some of the documents that would be necessary to conduct such an analysis, the supreme court reversed the national church's summary judgment because its motion was strictly based on an application of hierarchical deference. *Id.* at *12. The same is true in this case. We decline to perform a neutral principles analysis because that was not the grounds alleged or asserted in the denominational church's motion or pleadings. Such issues should be addressed and properly raised in the trial court with the guidance given by the

*Masterson* opinion.

The denominational church also argues that *Masterson* is not controlling because "there is no schism and property disputes are governed by the Presbyterian church." While it is true that *Masterson* involved a church schism and this case arguably does not because Windwood has yet to leave the PCUSA, the *Masterson* holding is not so limited. Indeed, the court stated, "We hold that Texas courts should use the neutral principles methodology to determine property interests when religious organizations are involved." *Id.* at *1. This case is a property dispute involving a religious organization, thus we conclude that *Masterson* is applicable and mandates reversal of the denominational church's summary judgment.

## CONCLUSION

We reverse the trial court's judgment and remand for further proceedings.


Sherry Radack
Chief Justice

Panel consists of Chief Justice Radack and Justices Bland and Huddle.