STOGNER et al. v. LAIRD et al.

(Court of Civil Appeals of Texas. Dallas. Feb. 24, 1912. Rehearing Denied March 16, 1912.)

1. APPEAL AND ERROR (§§ 1052, 1056*)—HARMLESS ERROR—ADMISSIBILITY OF EVIDENCE.

Where the evidence, without reference to any errors committed at the trial, clearly shows

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key No. Series & Rep'r Indexes

that complainants were not entitled to relief, errors in the admission and rejection of evidence were harmless.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4171–4177, 4187–4193, 4207; Dec. Dig. §§ 1052–1056.*]

2. RELIGIOUS SOCIETIES (§ 25*)—ACTION BETWEEN FACTIONS—SUFFICIENCY OF EVIDENCE.

Evidence, in an action for an injunction by parties claiming to be the elected trustees of a church against other parties claiming in the same right, *held* sufficient to show that resolutions electing complainants as trustees were passed by an affirmative vote at a regular, legal, and authorized convention of the church.

[Ed. Note.—For other cases, see Religious Societies, Cent. Dig. §§ 154–167; Dec. Dig. § 25.*]

3. RELIGIOUS SOCIETIES (§ 23*)—PROPERTY AND FUNDS—DIVISION OF CHURCH—RIGHT OF ACTION.

Where an independent religious society having the congregational form of government, and owing no fealty or obligation to any higher authority, separates at a regular meeting into distinct and conflicting bodies, neither faction can maintain an action to enjoin the other from attempted control and interference with church property and funds, unless both factions hold different opinions regarding the matters upon which they divided, and unless one or both of such factions has effected a church organization which claims to be the original organization.

[Ed. Note.—For other cases, see Religious Societies, Cent. Dig. §§ 147–153; Dec. Dig. § 23.*]

4. RELIGIOUS SOCIETIES (§ 18*) — PROPERTY AND FUNDS—RIGHTS OF MAJORITY.

In an independent religious society having the congregational form of government, and owing no fealty or obligation to any higher authority, the will of the numerical majority of its members must determine the action of the church upon all questions of church government and use of church property.

[Ed. Note.—For other cases, see Religious Societies, Cent. Dig. §§ 111–129; Dec. Dig. § 18.*]

Talbot, J., dissenting.

Appeal from District Court, Dallas County; Kenneth Foree, Judge.

Action for injunction by W. W. Stogner and others, as trustees of the First Baptist Church of Oak Cliff, Tex., against A. S. Laird, Dalton Scales, and others, with cross-action by defendants. Judgment for defendants, and plaintiffs appeal. Affirmed.

Yancy Lewis and Nelson Phillips, for appellants. E. G. Senter and Crane & Crane, for appellees.

TALBOT, J. This suit was instituted on the 19th day of September, 1909, by appellants, W. W. Stogner, C. C. Haley, and J. P. Ricketts, as trustees of the First Baptist Church of Oak Cliff, Tex., to restrain the appellees, A. S. Laird and others, from interfering with them, as such, in the possession and control of the property belonging to said church.

The defendants answered, and upon the facts alleged by them sought similar relief against the plaintiffs. On preliminary hearing October 30, 1909, the injunction sought by plaintiffs was refused, and the injunction prayed for by the defendants was granted; and, pursuant thereto, on November 9, 1909, an injunction writ was duly issued against the plaintiffs, commanding them to desist and refrain from claiming or pretending to be officials of the said church, and from interfering in any way with the officials thereof in its management, etc., and further commanding the plaintiff Stogner to deliver to A. C. McKay, as the clerk of said church, all books and records thereof in his possession.

By an amended petition, filed May 10, 1910, Dalton Scales, J. M. Scales, and C. B. Slaughter became parties plaintiff, and J. R. McGill, I. L. Allen, and C. B. Walker were made additional parties defendant. The amended petition alleged, among other things, that the plaintiffs were the duly elected and qualified trustees of said church, and brought the suit for themselves in such capacity, and for the benefit of the church and all members desiring to avail themselves of the benefit of the suit; that said church was an independent religious society, having the congregational form of church government; that from the time of its organization in the year 1890 down to December 7, 1904, from time to time there had been duly elected trustees, vested with the title and control of its property for the benefit of its membership; that at a regular conference held on December 7, 1904, it was duly and regularly determined by the church that its corporate character should be discontinued and its board of trustees abolished, pursuant to which action the then trustees thereof resigned, and that from that date down until September 19, 1909, the church was wholly without any trustees; that on September 19, 1909, at a due and regular conference of said church, at which a large part of its membership was present, plaintiffs were duly elected as the board of trustees of the church to take charge of its properties and to exercise the duties of such position; that, under the constitution and government of the church, the will of the numerical majority of its membership, present and acting in any lawful conference, controlled in all matters relating to the church or its property; that in said conference they were so elected as trustees by a majority vote of the membership participating therein, and were declared elected by the moderator then and there presiding; that, notwithstanding such lawful election and their qualification as such trustees, the defendants Anderson, McKay, and Day were claiming to be the official trustees of the church, and, in connection with the other defendants and a certain minority of the membership of the church, were in open rebellion against the plaintiffs as such trustees, had refused to recognize them as such officers, or their authority in

the premises, had refused to turn over to them the church property described in the petition, and, inspired by ill will and malice and a purpose to thwart the expressed will of a majority of the membership of the church, were resisting the authority of plaintiffs, which action had resulted in a schism in the church. They prayed, in substance, that they be declared to be duly elected and qualified trustees of the church, and as such entitled to the property described in the petition, and that they be quieted in their title thereto; that the injunction theretofore granted against them in favor of the defendants be dissolved, and that the defendants be enjoined and commanded to recognize them as the lawful trustees of the church and their authority as such, and be enjoined from interfering with their control of the church property and in the exercise of their rights as such trustees. They also prayed for judgment for certain moneys alleged to belong to the church and for the rental value of the church property, of the use of which they have been deprived.

The defendants' amended original answer interposed a general denial to the allegations of the plaintiffs' petition, and the further pleas: That neither of the plaintiffs was a trustee of the church, or had any right to or control of any of the church property; that the basis of plaintiffs' alleged right to the premises was the pretended action of the church on September 19, 1909, but that such action was not the action of the church, but only of a small minority, who, without notice to the majority, had attempted on that date to take forcible possession of the church house, and pretended to pass some resolutions electing the plaintiffs as trustees of the church, all of which was done pursuant to a conspiracy between some of the plaintiffs with the view of instituting this suit; that at said pretended session the majority of those voting thereat voted in the negative and against said resolutions, and the same were actually lost, though plaintiffs claimed they were adopted; that if they were mistaken in this, and if, in fact, said resolutions were adopted at that meeting by a majority vote, and were the act of the church, that such action was thereafter duly rescinded by said church by two respective called conferences held on, respectively, October 1, 1909, and October 3, 1909, the minutes of both of which special conferences were adopted and approved at a regular session of the church held on October 6, 1909; that none of the plaintiffs were members of the church, all of them having been excluded therefrom, and that they had no interest in the church property sued for, legal or equitable, but, notwithstanding their exclusion from the church, plaintiffs interfered with its services, etc. They prayed that the temporary injunction theretofore granted be perpetuated.

In addition to the pleadings stated, the plaintiffs filed supplemental petitions and the defendants supplemental answers, the contents of which need not be stated.

A trial was had before the court and a jury, and resulted in a verdict favorable to the defendants, appellees here, upon which judgment was rendered, declaring the defendants Anderson, McKay, Day, Allen, and Walker to be the duly constituted trustees of the church and entitled to exercise the authority thereof, perpetuating the temporary injunction theretofore issued against the plaintiffs, and restraining them from claiming or pretending to be officials or members of said church, and from interfering in any way with the officials thereof in the management of its business and affairs. Plaintiffs' motion for a new trial having been overruled, they have prosecuted this appeal.

[1] The appellants have presented a number of assignments of error complaining of the trial court's action in regard to the admission and exclusion of evidence and charges given and refused by the trial court, and it is agreed by all of us that some of these assignments point out serious error; but the majority of the court are of opinion that, while there may have been two factions in the Baptist Church of Oak Cliff, differing in sentiment, and representing diverse opinions touching the matters in regard to which they differed, still the evidence conclusively established, as contended by appellees, that, without reference to any errors committed on the trial, appellants were not entitled to recover any judgment whatsoever against appellees; therefore the errors committed in respect to the admission and rejection of evidence and the charges given and refused become immaterial, and the case should be affirmed.

[2] The evidence shows that all the appellants and appellees were formerly members of the First Baptist Church of Oak Cliff; that this church had for a period of about 10 years co-operated with what is known as the Baptist Missionary Association. This association consisted of Baptist churches, co-operating with each other in doing state missionary work throughout the state of Texas. On the 9th day of June, 1909, the Baptist Church of Oak Cliff, having a congregational form of church government, by a majority vote of the members then present, withdrew from the Baptist Missionary Association and declined to further co-operate and affiliate with it. This result was secured by appellees over the protest of appellants. On the 13th day of July, 1909, appellant Stogner sought to have this question reconsidered; but the former decision of the church was adhered to. At a meeting held on the 4th day of August, 1909, appellant Stogner called up a resolution that he had previously offered, which called for some action against the pastor of the church. This meeting resulted in the fellowship of the church being withdrawn from appellant Stogner and eight other members, upon the charge that they would not abide by the majority rule.

There were, however, no formal charges preferred against these members, and notice thereof served upon them, prior to the action taken, expelling them from the church, or withdrawing fellowship from them. After this, the pastor of the church, Rev. J. J. Kellam, went to Brownwood, for the purpose of conducting religious services, and expected to be absent from the Oak Cliff Church on Sunday, September 19, 1909. Before leaving, he made arrangements to have Rev. J. H. Martin, a Baptist minister, fill his pulpit on that date.

On Sunday morning, September 19, 1909, after the regular Sunday school services were over, a church conference was held in the church house. A moderator was elected, and the following resolutions offered, namely: "Inasmuch as J. J. Kellam has announced that there are no trustees of this church and has been using the money contributed for the building of Melba Chapel and the purchase of a lot, deeding the same to parties unknown to us, not being recorded in the clerk's office of Dallas county, Texas, but stating that the deed is held in the name of the deacons of the First Baptist Church of Oak Cliff, we, the First Baptist Church of Oak Cliff, hereby declare all the deaconships of this church vacated and all the trustees, if any, annulled and the following elected to take charge of the properties of this church and hold them for the benefit of the members thereof, to wit, W. W. Stogner, C. C. Haley, J. P. Rockett, Dalton Scales, J. M. Scales, and C. B. Slaughter, who will call as many to their assistance as they may deem necessary. In view of the above-cited conduct, Pastor J. J. Kellam of the First Baptist Church of Oak Cliff is hereby relieved of the pastorate of this church, and the moderator is instructed to appoint a committee to secure a pastor, subject to the action of the church. To clarify the records of this church, all acts, pretended or real, of the June, July, August, and September conferences are hereby, under the advice of the council and the authority of this church, declared null and void and rescinded; but the clerk is instructed to record them for the future use of this church." While these resolutions were being read, considerable disorder and noise prevailed. The choir, joined by some of the congregation, encouraged so to do by A. C. McKay, and probably Dr. J. H. Martin, sang continuously. One of the appellees, A. C. McKay, testified: "I think I went to the choir a time or two and asked them to sing on. My purpose in doing that was to prevent the reading of that resolution. We did not know what was in it, and had no notice of its contents, and I didn't want the congregation to hear him. Our claim to the court is that we drowned the reading of the resolution, and didn't hear it, and didn't have an opportunity to vote on it; but that would be my humble opinion only. It was my purpose to prevent that matter from going to a vote; and to accomplish that purpose I incited them to sing. If a vote was a part of the general proceedings, the purpose of the singing was to prevent the vote being taken. The vote was taken, however; we didn't succeed in that part of it." When the reading of the resolutions was finished, their adoption was to put to a vote of the conference. The evidence is conflicting as to whether or not a majority of those present voted in favor of the resolutions; but it is undisputed that the moderator declared them carried, that no appeal was taken from the ruling of the moderator, or motion made to reconsider the vote, and the evidence is amply sufficient to warrant the conclusion that the resolutions were in fact passed by a decided affirmative vote, not including those from whom the fellowship of the church may have been withdrawn at a former conference of the church. The evidence is also sufficient to warrant the conclusion that the conference of September 19, 1909, was a regular, legal, and authorized conference of the church. The resolutions mentioned and the original petition filed in this suit were prepared at the instance of one of the appellants, or a member of the faction to which they belonged, before the action taken by the conference of September 19, 1909, and this suit instituted about 4 or 5 o'clock of the afternoon on that date.

After the adoption of the resolutions referred to, the conference adjourned, but so great was the confusion and opposition thereto by the contending forces that neither Dr. Martin, who had been requested to do so by the pastor of the church, nor Dr. Cason, a Baptist minister, who had been selected by the faction, or some member thereof, to which the appellants belonged, was permitted to preach, either during the morning or afternoon of September 19, 1909; but, on the evening of that day, the members of the faction of which the appellants are representatives, having retired from the church, Dr. Martin filled the pulpit and preached to those of the faction represented by appellees remaining. There is testimony to the effect that on July 7, 1909, the pastor of the church, mentioned in the resolutions claimed to have been adopted September 19, 1909, was, on motion made, by a vote of 32 to 18, requested to resign his pastorate. After the pastor, Dr. Kellam, returned from Brownwood, and on October 1, 1909, a conference of those belonging to the faction of which the appellees are members was held, and a resolution by them unanimously adopted, declaring that the conference of September 19, 1909, "was irregular, illegal, and all its acts null and void," and that "this, the First Baptist Church of Oak Cliff, does now withdraw fellowship from the following named members, and that henceforth they shall be entitled to none of the privileges of the church." Then followed the names of 27 members of the faction to which the appellants belong. A

similar conference was held October 3, 1909, and substantially the same resolutions as the above were again adopted, and to the names of those from whom the fellowship of the church was withdrawn on October 1st the name of H. H. Pierce was added. Neither of these last-named conferences was a regular conference; but, on the evening of October 6, 1909, the same being a regular conference night, the resolutions passed at the previous conferences of October 1 and October 3, 1909, were adopted. The members of the faction to which the appellants belonged did not attend either of the conferences of October 1st, October 3d, or October 6th, and take part in the proceedings then had. The resolutions passed September 19, 1909, withdrew the fellowship of the church from several of the faction of which the appellees are members, and notices were issued by appellant Stogner and served upon them and the pastor, Kellam, who had been by said resolutions relieved of the pastorate of the church, to appear on October 6, 1909, a regular conference night, to answer the charges preferred against them; but no one appeared to prosecute the charges.

It is further shown that the resolutions that were adopted September 19, 1909, were to be made the basis of the court proceedings, which, it was contemplated, would follow their passage, and that the conference of that date was called with that end in view. The direct testimony on the question as to whether or not the conference of September 19, 1909, resulted in a division of the membership of the church into two separate and conflicting bodies is as follows: W. W. Stogner testified: "The result of the meeting of September 19th was a division of the church into two factions. The lines were very clearly drawn after that meeting. Following the meeting of September 19th, the schism began to crystallize, and each faction began to take a distinct form, and the result has been that the pastor's faction worship at the church, while ours has gone to the Baptist University chapel to worship. There has been no affiliation between the two elements since September 19, 1909. Our faction has not recognized the other faction as the church. I do not know what the other faction has done in that respect." Milton Parks testified: "The church has been divided into two factions since September 19, 1909. I stated that from my observation. There is a schism and two parties in the church. They are not affiliating with each other, so far as I know. The plaintiffs' faction meet in the University building. I presume the other side worship in the church building. I have never been there with them." Dr. S. A. Hayden testified: "The church has been divided into two factions since that September meeting. There has been a marked division. They have not affiliated together in church worship. I could not say personally

that the defendants have recognized or refused to recognize the faction that those trustees belong to. They have not had any communication with me personally. I know in a general way that they refused to recognize those men as trustees; but, as to testifying as to any certain statement made by them, I could not do it. The plaintiffs' faction have worshipped since that time in the chapel of the T. B. U., the room that was offered to them. They have not worshipped with the others that I know of."

It further appears, without dispute, that every member that was excluded from the church in the meetings subsequent to the meeting of September 19, 1909, was a member of the anti-Kellam faction, or faction to which the appellants belonged. There is also testimony to the effect that some time following the meeting of September 19, 1909, and probably since the granting of the injunction herein, the Kellam faction, or faction to which the appellees belonged have been in possession of the church property, and that they have nailed up the doors and windows of the church house.

[3, 4] The view taken by a majority of the court is that the evidence shows, without material contradiction, that there was not such a separation of the membership of the First Baptist Church of Oak Cliff into two distinct and conflicting bodies, composed, respectively, of the appellants and their sympathizers and the appellees and their sympathizers, as entitled the appellants to maintain this suit. In the opinion of the court, it was essential, in order to invest the appellants with a right of action to obtain the relief sought by them, that the evidence show, not only two factions in the church entertaining different opinions regarding the matter upon which they were divided, but also that one or both of such factions had, prior to the institution of this suit, effected a church organization which they claimed to be the First Baptist Church of Oak Cliff. Such an organization was shown in the case of Gipson v. Morris, 31 Tex. Civ. App. 645, 73 S. W. 85, relied on by appellants as authority to sustain them in their prosecution of this action; and therefore that case is clearly distinguishable in the facts from the case at bar. The principle enunciated in Gipson v. Morris, to the effect that in independent religious societies having the congregational form of church government, and which owe no fealty or obligation to any higher authority, the will of the numerical majority of its members must determine the action of the church upon all questions of church government and control the use of the property of the church, and that when a division occurs in an organization of this character during a regular meeting of such organization, which leads to a separation into distinct and conflicting bodies, each body claiming to be alone the organization, "the rights of such

bodies must depend upon which of the two had a majority of the members of the original organization at the time of the division, unless, by the rules governing the method of transacting business adopted by the organization, the majority failed to assert its right to control such meeting in the proper manner or at the proper time," is recognized and approved by this court. But the majority of the court is of the opinion that the resolutions passed by the members of the First Baptist Church of Oak Cliff September 19, 1909, even though the same were adopted by a majority vote of the members then present, did not have the effect to divide the membership of the church into two separate and distinct organizations or conflicting bodies, each claiming to be the First Baptist Church of Oak Cliff; and therefore the action taken by appellees and their friends and sympathizers on October 1 and 3, 1909, as ratified and adopted October 6, 1909, was the action of the church and binding upon the appellants.

The members of the court entertaining the foregoing views are of the opinion that the third, fifth, seventh, and eleventh assignments presented by appellants point out prejudicial errors for which the judgment of the district court ought to be reversed and the cause remanded for new trial, but for the fact that the evidence, in their opinion, conclusively shows that appellants are not entitled to maintain this suit. It therefore follows that, in the opinion of the majority of the court, the judgment of the court below should be affirmed; and it is accordingly so ordered.

Affirmed.

TALBOT, J. (dissenting). I am unable to agree to the disposition made of this case by the majority of the court. It is my opinion that the evidence disclosed by the record sent to this court is amply sufficient to authorize a finding that the resolutions offered September 19, 1909, were adopted by a majority vote of the members of the church then present and voting, and that the adoption thereof led immediately to a separation of the membership of the church into two separate and distinct organizations or conflicting bodies, such as is contemplated by law; each claiming to be the First Baptist Church of Oak Cliff. I do not believe, as seems to be the view of the majority of the court, that positive evidence of a meeting held by one or both of the factions, at which a church organization was effected by direct action taken for the purpose, and thereafter claimed to be the First Baptist Church of Oak Cliff, was essential to show such a separation of the membership of the church. That the facts and circumstances shown were sufficient to warrant the conclusion that the membership of the church was divided into two irreconcilable conflicting bodies or organizations, each claiming, in effect, to be the First Baptist Church of Oak Cliff, is so clear to my mind that it is difficult for me to conceive how there can be a difference of opinion in regard thereto. The trial court took this view of the evidence and submitted the issue to the jury.

Entertaining the views above expressed, I think the judgment of the lower court should be reversed and the cause remanded, especially for the errors pointed out in the appellants' third, fifth, seventh, and eleventh assignments of error. Each of these assignments should, in my opinion, be sustained, substantially for the reasons urged by the appellants.