## WALLACE et al. v. WELLS et al.
### (No. 9411.)

(Court of Civil Appeals of Texas. Ft. Worth. Dec. 18, 1920.)

1. **Religious societies ⬤⟿9—Election of trustees by majority faction deprived former trustees of authority.**

Under Rev. St. arts. 1159, 1212, relating to religious societies, where there were never two separate and distinct "Churches of Christ" established in a town, but were at all times merely two factions of the same church, the majority faction of which, in the manner authorized by such church as the proper method, elected new trustees on a specified date, such election took away all authority previously existing in other and former trustees.

2. **Religious societies ⬤⟿5 — No assumption trustees given authority to enact by-laws in contravention of statute.**

It cannot be assumed that the charter of a church, in granting to the board of trustees power to make by-laws, gave the trustees authority to enact by-laws in contravention of the statutes relating to corporations, as power to exclude a majority of the church members displacing the board of trustees.

Appeal from District Court, Palo Pinto County; J. B. Kuth, Judge.

Suit by J. M. Wallace and others against T. M. Wells and others. From judgment for defendants, plaintiffs appeal. Affirmed.

Bouldin & Surles and S. D. Goswick, all of Mineral Wells, for appellants.

Penix, Miller, Perkins & Dean, of Mineral Wells, for appellees.

CONNER, C. J. J. M. Wallace and other named plaintiffs as trustees for the "Church of Christ" of Mineral Wells, Tex., instituted this suit against T. M. Wells and other named defendants as trustees of the "Pentecostal Church of the Nazarene" of Mineral Wells to recover the title and possession of lot No. 1 in block J of the French addition to the city named.

The cause was submitted to a jury upon special issues, upon the answers to which the court entered judgment in favor of the defendants, and the plaintiffs in the suit have appealed.

The findings of the jury are not questioned nor is there any contention that the findings do not authorize the judgment rendered. The contention, and the only one before us as presented by the appellants' first assignment of error, is that a peremptory instruction in their favor should have been given as requested upon the undisputed facts.

The facts, in substance and so far as necessary to state them, are that the deed from the common source of title, under whom all parties to this litigation claimed, was made to J. M. Wallace and others named as trustees in a charter incorporating the Church of Christ at Mineral Wells. At the time of procuring this charter there was a schism or division among the members of the church, and J. M. Wallace and his associates constituted the minority, it appearing that the majority of the membership had withdrawn themselves from the minority and begun worship at another place. The charter named J. M. Wallace and others as trustees with power to make by-laws, the only one of which appearing in the evidence is the one authorizing the trustees named in the charter to supply all vacancies in the board of trustees arising from death, resignation, or otherwise by a vote of those remaining. At a subsequent date, however, there was a re approachment and reconcilation by the factions of the church, and they again proceeded as a united body, after which the church as a whole, in the usual manner of such selections, elected or selected a new board of trustees composed of A. L. Woodward and others, who, as trustees, on the 10th day of March, 1919, in due form and for a valuable consideration conveyed the lot in controversy to the appellees.

The substance of the contention of appellants seems to be that, inasmuch as the title was vested in them by the common source, and inasmuch as the board of trustees named in the charter remained the same as so named, except as vacancies had been filled as provided in the by-laws, the legal title never passed out of them, and that the deed from the subsequent trustees of the Church of Christ to appellees was not operative, inasmuch as no title in that board of trustees existed. We have been unable to adopt appellants' contentions. There was evidence tending to show and the jury found that the charter was procured by the minority, and that the majority members of the Church of Christ did not consent to be incorporated or have knowledge of the application therefor, nor did the majority members ever ratify or adopt the charter or act thereunder, but, on the contrary, at all times worshipped in a congregational capacity. The original deed from Mrs. Fort, the common source, was to J. M. Wallace and others as "trustees of the Church of Christ, * * * for the use and benefit" "of said church, * * * to have and to hold to said trustees and their successors in office." Article 1212, Rev. Statutes, provides:

⬤⟿For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

"Any religious society, charitable, benevolent, literary, or social association (other·than colleges, universities, academies or seminaries), and also any military or fire company, may, by the consent of a majority of its members, become a body corporate under this title, electing directors or trustees, and performing such other things as are directed in the case of other corporations; and when so organized shall have all the powers and privileges, and be subject to all the restrictions in this title contained, for the objects named in the charter, and shall have the same power to make by-laws, for the regulation of their affairs as. other corporations."

It thus appears that it is the majority and not the minority of the members of a religious society which is authorized to procure a charter of incorporation, and when such majority do so its members are required to elect directors or trustees.

[1] Another article of the statutes relating to corporations and pertinent herein, namely, 1159, provides that "the directors or trustees shall have the general management of the affairs of the corporation." So that it cannot be said, we think, under the statutes, that the charter vested in the trustees·therein named the property in controversy beyond the power of disposition on the part of the church. There was evidence tending to show, and the jury found, among other things, that there was never two separate and distinct Churches of Christ established in Mineral Wells; there were at times merely two factions of the same church, the majority of which, in the manner authorized by that church as the proper method, elected new trustees on the 9th day of March, 1916, thus taking away all authority that may have theretofore existed in J. M. Wallace and other former trustees. See Stogner v. Laird, 145 S.·W. 644; Jarrell v. Sproles, 20 Tex. Civ. App. 387, 49 S. W. 904; Clark v. Brown, 108 S. W. 421; Brown v. Clark, 102 Tex. 323, 116 S. W. 360, 24 L. R. A. (N. S.) 670.

[2] But, if it be admitted that the charter had the effect of constituting both factions of the church as a corporated body, and that J. M. Wallace and the others named as trustees in the charter were thus lawfully empowered to ·hold all property of the church and to make by-laws for the government of the incorporated body, and that the charter or act of incorporation cannot be questioned in this collateral action, it must nevertheless follow, we think, that appellants were properly adjudged to be without right. The particular power relied upon by appellants to perpetuate the existence of their own body of trustees and thus exclude a power in the majority of the church members to displace them by others is not a power to be found in the charter. It is to be found only in the by-laws enacted by the board of trustees

after the procurement of the charter. In granting the power to make by-laws it cannot be assumed that the trustees were given authority to enact by-laws in contravention of the terms of the statutes, and the statutes, as is to be implied from the articles already quoted and expressly provided by article 1158, also pertinent to this case, authorize the election of a board of trustees by the "members" of the corporation. The last article reads:

"The secular affairs of a religious corporation shall be under the control of a board of trustees, to be elected by the members of such corporation; and the title to all property of any such corporation shall vest in such trustees."

It thus appears by reading articles 1158 and 1212 that the Church of Christ even as an incorporated body had authority by vote or selection by a majority of the members to elect as they did a board of trustees, which, when done, of course transferred all power of the former board to that of the new board and vested in such new board the title to all property of the corporation with power to dispose of the same.

We conclude that under the undisputed evidence and upon the verdict of the jury the judgment below was the proper one, and that therefore appellants' assignment of error should be overruled, and the judgment affirmed.