The SCHISMATIC AND PURPORTED CASA LINDA PRESBYTERIAN CHURCH IN AMERICA, et al., Appellants,

v.

GRACE UNION PRESBYTERY, INC., et al., Appellees.

No. 05–85–00599–CV.

Court of Appeals of Texas, Dallas.

April 18, 1986.

Rehearing Denied June 4, 1986.

Jack Pew, Jr., Dallas, for appellants.

Lee Smith, Dallas, for appellees.

Before AKIN, DEVANY and STEW-ART, JJ.

STEWART, Justice.

This case concerns a dispute over the ownership of church property after some of the members of the Casa Linda Presbyterian Church of Dallas, Texas, sought to withdraw from the Presbyterian Church in the United States (PCUS), the hierarchical and parent church to which Casa Linda Presbyterian Church had always belonged. The withdrawing group appeals the trial court's judgment vesting title to the church's real and personal property in the church members who remain loyal to the parent church. In seven points of error, the withdrawing group contends that the trial court erred by (1) violating the first and fourteenth amendments of the United States Constitution in failing to apply neutral principles of law to determine church ownership; (2) holding that the hierarchy

of the PCUS was authorized to designate the minority of the membership of the Casa Linda Presbyterian Church of Dallas, Texas, as titleholder of all church property; and (3) and (4) finding that the hierarchy in fact designated the loyal group as such titleholder and finding null and void the meeting resulting in the withdrawing group's disaffiliation with the PCUS because neither finding is supported by legally or factually sufficient evidence; (5) basing the judgment on an implied trust theory, if it did, because such theory is without support in the law or evidence and was waived by appellees; (6) basing its judgment on the withdrawing group's violation of the "Pastoral Letter," if it did, because any such violation could not in effect divest title to the church property from the withdrawing group nor vest title in the loyal group; and (7) awarding the church property to "Casa Linda Presbyterian Church, Inc.," a nonexistent corporation. We do not agree that these points of error require reversal of the judgment. However, we modify the judgment to decree title in the Casa Linda Presbyterian Church of Dallas, Texas. As modified, we affirm.

The Presbyterian Church in the United States is governed according to an ascending order of ecclesiastical judicatories or "courts": Church Sessions, Presbyteries, Synods, and the General Assembly. The government of the local church is committed to its Session, the actions of which are subject to review and control by the higher church courts. PCUS is governed by a Constitution which consists of the Confession of Faith, the Larger and Shorter Catechisms, and the Book of Church Order. The Constitution delegates to the various church judicatories their respective areas of authority.

The Presbytery is given power to review the records of the Session, redress whatever the Session may have done contrary to order, and see that the Session observes the Constitution of the church. It also has power to see that the injunctions of the church judicatories are obeyed. The Presbytery alone has power to organize new churches, receive and dismiss churches, and dissolve churches, as well as to ordain, receive, dismiss, install, remove, and judge ministers. Any individual who questions an action taken by any church judicatory or who disagrees with the decision rendered by it may appeal the action or decision to the immediately superior ecclesiastical tribunal.

On February 13, 1973, in anticipation that some of its local congregations might attempt to withdraw from the PCUS, the Presbytery of the Covenant (now known as the Grace Union Presbytery) established an Administrative Commission pursuant to provisions of the Book of Church Order to deal with any attempts by local congregations to withdraw from the Presbytery. On April 13, 1973, the Commission adopted an ecclesiastical injunction styled "A Pastoral Letter to the Ministers and Sessions of the Presbytery of the Covenant." The Pastoral Letter required that ninety days notice be given to the Presbytery by any Session prior to calling a congregational meeting for the purpose of considering a proposal to withdraw from the Presbytery. It also required that an additional ten days written notice be given to every communicant on the roll of any such church stating that the purpose of the meeting is "to consider and to act upon a proposal that the congregation vote to 'withdraw' from the Presbytery of the Covenant of the Presbyterian Church in the United States."

Casa Linda Presbyterian Church was organized as an unincorporated religious association in 1947. The association incorporated as a non-profit Texas corporation in 1949 under the name "The Covenant Presbyterian Church of Dallas, Texas"; in 1952 the corporate name was changed to "The Casa Linda Presbyterian Church in Dallas, Texas." The church has always subjected itself to the government of the Presbytery of PCUS, as have its ministers through ordination vows. On February 15, 1981, a congregational meeting was held with 429 of 1100 members present. Two hundred and eighty-five of those present, including two of the church's ministers, voted to withdraw from the PCUS. This action was

taken without the ninety-day notice to the Presbytery or the ten-day notice to the members on the church roll as required by the Pastoral Letter. This majority then united with Presbyterian Church in America and has continued to retain possession of the local church property.

On February 20, 1981, the Presbytery appointed an Administrative Commission to act for it to inquire into and resolve the difficulties in the Casa Linda Congregation. Thereafter, the Commission declared the purported withdrawal of the Congregation to be unconstitutional and therefore null and void. The Commission later suspended from their offices both withdrawing ministers and all withdrawing elder members of the Session, except one, and assumed original jurisdiction over the congregation in place of the Session. In addition, the Commission recognized the members of the congregation who remained loyal to PCUS "as the Casa Linda Presbyterian Church of Dallas, Texas, a constituent congregation of Grace Union Presbytery...." None of appellants availed themselves of the right to appeal the actions of the Commission.

When the withdrawing group refused to turn over all of the local church property to the Presbytery and the loyal group, they filed suit, requesting the court to declare the actions of the withdrawing faction null and void and to vest the church's real and personal property in the loyal group. Upon a judgment for Presbytery and the loyal group, the withdrawing faction appeals.

Although appellants assert seven points of error, the main thrust of their argument is that this controversy should be decided by application of the neutral principles of law method for resolving church property disputes, articulated in the United States Supreme Court's decision in *Jones v. Wolf,* 443 U.S. 595, 99 S.Ct. 3020, 61 L.Ed.2d 775 (1979); that neutral principles of law require the award of the local church property to appellants; and that the authority

relied upon by the trial court is inconsistent with *Jones v. Wolf* and is not a correct application of neutral principles of law.

Appellees respond that the decision in *Jones v. Wolf* does not require state courts to use the neutral principles of law approach to decide church property disputes; that *Jones* also reaffirmed the deference rule as a constitutional approach to resolving hierarchical church property disputes; that the trial court relied on Texas authority which applied the deference rule; and, therefore, that neither the authority relied upon by the trial court nor its judgment is inconsistent with the *Jones v. Wolf* decision.

■ First, we consider appellants' seventh point of error in which they contend that the trial court violated the first and fourteenth amendments to the United States Constitution in failing to apply neutral principles of law to determine the ownership of real and personal property of the Casa Linda Presbyterian Church. We do not agree. The United States Supreme Court has approved two methods for deciding title to church property. The first, known as the "deference rule," was established in *Watson v. Jones,* 80 U.S. (13 Wall.) 679, 20 L.Ed. 666 (1871). In that case, the Court held that in a hierarchical religious body[1] such as the PCUS, the civil courts are prohibited from interfering with the decisions of ecclesiastical tribunals; it was considered that persons who unite themselves to a hierarchical church organization do so with an "implied consent" that intrachurch disputes, including disputes over church property, will be decided by the church courts. Later, in the case of *Gonzalez v. Archbishop,* 280 U.S. 1, 16, 50 S.Ct. 5, 7, 74 L.Ed. 131 (1929), the Court recognized that civil courts have the right to determine whether a church decision resulted from fraud, collusion, or arbitrariness. Both *Watson* and *Gonzalez* were

---

1. The Supreme Court defined a "hierarchical denomination" as one in which "the religious congregation or ecclesiastical body holding the property is but a subordinate member of some general church organization in which there are superior ecclesiastical tribunals with a general and ultimate power more or less complete, with some supreme judicatory over the whole membership of that organization." *Watson,* 80 U.S. (13 Wall.) at 722.

federal common law decisions. However, after the establishment clause and the free exercise clause of the first amendment were incorporated into the fourteenth amendment and thereby made applicable to the states, the Supreme Court reaffirmed the deference rule and implied that it had constitutional standing. *Kreshik v. Saint Nicholas Cathedral*, 363 U.S. 190, 80 S.Ct. 1037, 4 L.Ed.2d 1140 (1960); *Kedroff v. Saint Nicholas Cathedral*, 344 U.S. 94, 73 S.Ct. 143, 97 L.Ed. 120 (1952).

The second approach, known as "neutral principles of law," was first enunciated by the Supreme Court in *Presbyterian Church in the United States v. Hull Memorial Presbyterian Church*, 393 U.S. 440, 89 S.Ct. 601, 21 L.Ed.2d 658 (1969). In that case, involving a property dispute between two local churches on one hand and the parent church on the other, the Court recognized that civil courts may resolve litigation over church property on the basis of "neutral principles of law, developed for use in all property disputes, which can be applied without 'establishing' churches to which property is awarded." 393 U.S. at 449, 89 S.Ct. at 606.

We now consider whether the more recent ruling by the Supreme Court in *Jones v. Wolf*, 443 U.S. 595, 99 S.Ct. 3020, 61 L.Ed.2d 775 (1979), upon which appellants so heavily rely, has altered prior law. The facts of *Jones v. Wolf* are similar to the present case in the following respects: at a congregational meeting held by a quorum of the local church's duly enrolled members, a majority of those present voted to withdraw from the Presbyterian Church of the United States and become united with another denomination; the deed or deeds convey the property to the local church as opposed to the parent church; neither state statutes nor the local corporate charter indicates that the parent church has any interest in the property; and the provisions of the Book of Church Order concerning ownership and control of property do not reveal any language of trust in favor of the parent church. Following neutral principles of law, the Georgia state courts in *Jones* accordingly held that legal title to the property of the local church was vested in the local congregation. "Without further analysis or elaboration, they further decreed that the local congregation was represented by the majority faction...." *Id.* at 601, 99 S.Ct. at 3024. The United States Supreme Court held that although a state is constitutionally entitled to adopt neutral principles of law as a means of adjudicating a church property dispute, neither the trial court nor the Georgia Supreme Court explicitly stated it was adopting a presumptive rule of majority representation; that is, that under state law, the local congregation was represented by the majority faction at the congregational meeting. Thus, the Supreme Court reversed for the state court to decide the very issue that is before our court in this case: when title to church property is vested in the local church or congregation, what rule of law governs the determination of which of two competing factions represents the "local church" or the "local congregation"?

Nevertheless, appellants interpret the *Jones* decision as requiring a state to adopt the neutral principles of law approach. We disagree. The Supreme Court did not prohibit a state from using a different method to resolve such disputes. The Court reiterated that the first amendment prohibits civil courts from resolving church property disputes on the basis of religious doctrine and practice and that it requires civil courts to defer to the resolution of these issues by the highest court of a hierarchical church organization that has considered them. It also declared, however, that:

> Subject to these limitations, however, the First Amendment does not dictate that a State must follow a particular method of resolving such property disputes. Indeed, a State may adopt any one of various approaches for settling church property disputes so long as it involves no consideration of doctrinal matters, whether ritual or liturgy of worship or the tenets of faith.

443 U.S. at 604, 99 S.Ct. at 3026.

It is clear that in *Jones* the Supreme Court held that states may constitutionally

also follow the deference rule. The court simply concluded "that the first amendment [does not require] the states to adopt a rule of compulsory deference to religious authority in resolving church property disputes, even where no issue of doctrinal controversy is involved." *Id.* Therefore, we hold that the trial court in this case did not violate the first and fourteenth amendments in failing to apply neutral principles of law to determine the ownership of the church property.

All parties agree that the trial court in our case relied on the decision in *Presbytery of the Covenant v. First Presbyterian Church of Paris,* 552 S.W.2d 865 (Tex.Civ. App.—Texarkana 1977, no writ). The facts of that case are also very similar to ours: the majority of those members attending a local church meeting voted to withdraw from the PCUS; the notice requirements set forth in the Pastoral Letter were not followed; the withdrawing faction took possession and asserted ownership of church property; and the Presbytery designated the minority as the true congregation.

The Texarkana Court ascertained which faction was sanctioned by the PCUS and the name in which the property was conveyed. In deciding for the Presbytery, the court declared:

> When a division occurs in a local church affiliated with a hierarchical religious body, and a dispute arises between rival groups as to the ownership or control of the local church property, the fundamental question as to which faction is entitled to the property is answered by determining which of the factions is the representative and successor to the church as it existed prior to the division, and that is determined by which of the two factions adheres to or is sanctioned by the appropriate governing body of the organization. It is a simple question of identity. *Norton v. Green,* 304 S.W.2d 420 (Tex. Civ.App.—Waco 1957, writ ref'd n.r.e.); *Bramlett v. Young,* 229 S.C. 519, 93 S.E.2d [sic] 873 (1956); *St. John's Presbytery v. Central Presbyterian Church,*

*supra; Adickes v. Adkins,* 264 S.C. 394, 215 S.E.2d 442 (1975). In making such a determination, the civil court exercises no role in determining ecclesiastical questions. It merely settles a dispute as to identity, which in turn necessarily settles a dispute involving property rights. In doing so, the court applies neutral principles of law as required by *Presbyterian Church in the United States v. Hull Memorial Presbyterian Church, supra; Bramlett v. Young, supra.*

\* \* \* \* \* \*

> [I]t became the prerogative of the governing judicatories of PCUS to determine if the withdrawing faction or those on the church roll who remained faithful to PCUS and who wished to remain members of it constituted the lawful congregation of the First Presbyterian Church of Paris U.S. That question has been considered and finally ruled upon by those authorities. Those persons constituting the loyal faction have submitted themselves to the judicatories of PCUS and have been recognized by such as the duly existing local congregation. They therefore have the identity to make of them the First Presbyterian Church of Paris, U.S., and they are entitled to possession and control of the property conveyed to that Church.

*Id.* at 871. Although the court purported to apply neutral principles of law in the mistaken belief that the *Hull* decision required their application, the court in fact applied the deference rule in reaching its decision.

Our intermediate appellate courts have consistently followed the deference rule in deciding hierarchical church property disputes since the Texas Supreme Court ruling in *Brown v. Clark,* 102 Tex. 323, 116 S.W. 360 (1909). In *Brown,* an ecclesiastical disagreement within a Presbyterian Church resulted in a suit for the property of that church. The Texas Supreme Court, relying on *Watson v. Jones,* stated:

> "In this class of cases, we think the rule of action which should govern the civil courts, founded in a broad and sound

view of the relations of church and state under our system of laws, and supported by a prepondering weight of judicial authority is that, whenever the questions of discipline or of faith or ecclesiastical rule, custom, or law have been decided by the highest of these church judicatories to which the matter has been carried, the legal tribunals must accept such decisions as final, and as binding on them, in their application to the case before them" (quoting *Watson v. Jones*). This investigation will proceed upon the assumption that the decision of the church courts is correct.

*Brown*, 116 S.W. at 363. The one non-ecclesiastical issue the Texas Supreme Court examined was that of title to the property:

> The deed of the property was made to the trustees of the Cumberland Presbyterian Church at Jefferson, Tex. It expressed no trust nor limitations upon the title. The property was purchased by the church and paid for in the ordinary way of business, and there is not attached to that property any trust either express or implied. It follows, we think, as a natural and proper conclusion, that the church to which the deed was made still owns the property, and that whatever body is identified as being the church to which the deed was made must still hold the title. The Cumberland Presbyterian Church at Jefferson was but a member of and under the control of the larger and more important Christian organization, known as the Cumberland Presbyterian Church, and the local church was bound by the orders and judgments of the courts of the church.

*Brown*, 116 S.W. at 365. *Brown v. Clark* is the only opinion issued by the Texas Supreme Court on hierarchical church property disputes. Only four of our lower courts have addressed this type of property dispute since *Brown v. Clark*, the latest being the *First Presbyterian Church of Paris* case relied on by the trial court and discussed above. All of them cite the *Brown v. Clark* decision and all except *Browning v. Burton*, cite *Watson v. Jones*. In *Cussen v. Lynch*, 245 S.W. 932 (Tex.Civ.

App.—Amarillo 1922, no writ), the Court considered a dispute involving the Roman Catholic Church, and concluded that ecclesiastical decisions by church tribunals are binding on the civil courts in cases involving dependent property rights. In a case involving the hierarchical African Methodist Episcopal Church, the Austin Court of Appeals decided that a local church which consented to the laws of the parent church are bound by these laws, and withdrawing members of the local church lose rights to the abandoned church. *Browning v. Burton*, 273 S.W.2d 131 (Tex.Civ.App.—Austin 1954, writ ref'd n.r.e.). In *Norton v. Green*, 304 S.W.2d 420 (Tex.Civ.App.—Waco 1957, writ ref'd n.r.e.), a case involving the PCUS, the court decided ownership and possession of church properties recorded in the names of individuals and corporations acting as trustees. The Court stated:

> ... where there has been a division in a congregation, *those members who renounced their allegiance to the church lost any rights in the property involved and the use thereof belongs to the members which remain loyal to the church. It is a question of identity.* (emphasis added)

*Id.* at 424 (emphasis added).

Prior to *Jones v. Wolf*, the Georgia Supreme Court had adopted the neutral principles of law approach in *Presbyterian Church v. Eastern Heights Church*, 225 Ga. 259, 167 S.E.2d 658 (1969), while Texas courts have consistently followed the deference rule. The difference in state law accounts for the different methods used in the two state courts to resolve hierarchical church property disputes. The Supreme Court approved both methods in *Jones v. Wolf*.

Here, it is undisputed that the deed to the church property was in the name of "Covenant Presbyterian Church, US," and that its successor in title was the Casa Linda Presbyterian Church of Dallas, Texas. As in *Jones v. Wolf*, the issue is whether appellants or appellees represent the "Casa Linda Presbyterian Church of Dal-

las, Texas." Under that decision, state law controls the determination of this issue. Our state law requires deference to the Presbytery's identity of appellees, the loyal group, as the representative of the local church; consequently, it follows that appellees are entitled to possession and use of all church property.

■ Appellants do not challenge the judgment in this case on the basis that the trial court erred because it followed the Texarkana case. Instead, they urge us to depart from prior Texas law, which we have shown has consistently followed the deference rule, and to adopt the neutral principles of law rule approved by the United States Supreme Court in *Jones.* We recognize that in 1909 the Supreme Court may have felt compelled to follow the deference rule because it thought the *Watson v. Jones* decision required its application at the time *Brown v. Clark* was decided and that the lower courts felt compelled to follow *Brown v. Clark.* Even though the *Jones v. Wolf* decision now gives the states a choice of methods to resolve hierarchical church property disputes, our supreme court has nevertheless spoken on this issue. We are bound by that court's pronouncements on the law until it rules to the contrary. *Jones v. Hutchinson County,* 615 S.W.2d 927, 933 (Tex.App.—Amarillo 1981). Where the law is settled, the obligatory course for an intermediate court is judicial self-restraint. *See Watson v. Zep Manufacturing Co.,* 582 S.W.2d 178, 180 (Tex.Civ.App.—Dallas 1979, writ ref'd n.r. e.). Any reconsideration of the deference rule must be made, if at all, by the supreme court. Because we decline to abandon the deference rule for determining the present controversy, the judgment must be affirmed unless the trial court otherwise committed reversible error in the trial.

In two points of error, appellants contend that the trial court erred in holding that the Presbytery of PCUS was authorized to designate the minority group or the local church as title holder of the real and personal property of the church and in finding that the Presbytery in fact designated this group as title holder of such property. Specifically, appellants complain of the following finding of fact:

That the Administrative Commission pursuant to the authority bestowed upon it by the Presbytery, did legally determine and declare that the Plaintiff, Casa Linda Presbyterian Church, the loyal minority congregation, was the beneficial owner of all real and personal property of Casa Linda Presbyterian Church, Inc. at 9353 Garland Road, in Dallas, Texas, and was entitled to occupy and otherwise use the same.

Our attention has not been directed to any evidence in the record, nor have we found any, indicating the Administrative Commission had the authority to or did "declare and determine" that the loyal minority was beneficial owner of all church property. At most, the commission demanded "on behalf of the designated congregation which now constitutes the Casa Linda Presbyterian Church under orders of the Commission" that appellants turn over all title and property to the Commission for the benefit of the loyal congregation. Consequently, since no evidence exists to support this finding, it cannot support the trial court's judgment.

■ Nevertheless, we must sustain the trial court's judgment if it is correct on any theory of law applicable to the case regardless of whether the trial court gives the correct legal reason for its judgment or whether it gives any reason at all. *Gulf Land Co. v. Atlantic Refining Co.,* 134 Tex. 59, 131 S.W.2d 73, 84 (1939). The record reflects that the trial court made 23 other findings of fact and 17 other conclusions of law, none of which were contested by appellants. These other findings of fact are, therefore, final and we are bound by them. *Texas Real Estate Commission v. Hood,* 617 S.W.2d 838 (Tex.Civ.App.—Eastland 1981, writ ref'd n.r.e.). Included among these are the finding and conclusion that the Presbytery duly determined that the group remaining loyal to the Presbytery constituted the true and lawful Casa Linda Presbyterian Church, Inc. and that

the group so designated is in law the properly designated true church *and thus* entitled to all of the property, both real and personal of said church. This finding and conclusion support the trial court's judgment under the Texas authority cited herein. Thus, the erroneous holding and finding of which appellants complain were not essential to the disposition of the case and, hence, do not constitute reversible error under Rule 434 of the Texas Rules of Civil Procedure. *Worden v. Thornburg*, 564 S.W.2d 480, 486 (Tex.Civ.App.—Corpus Christi 1978, writ ref'd n.r.e.).

In their third point of error, appellants contend that the trial court erred in its finding that the meeting of February 15, 1981, was void under church law, due to a lack of legally or factually sufficient evidence to support such finding. In determining a "factual insufficiency" point, we must consider all the evidence in order to determine whether the evidence supporting the findings is so weak, or the evidence to the contrary so overwhelming, that the findings should be set aside and a new trial ordered. *In Re King's Estate*, 150 Tex. 662, 244 S.W.2d 660, 661 (1951). The proper test to determine if the evidence is legally insufficient to support the findings upon which the judgment is based requires the reviewing court to consider evidence and its inferences in the light most favorable to factual determinations that support the judgment. *Garza v. Alviar*, 395 S.W.2d 821, 823 (Tex.1965).

■ The record indicates that the Commission of the Presbytery declared the purported withdrawal of the congregation to be unconstitutional due to lack of notice to the Presbytery as required by the Pastoral Letter and therefore null and void. Appellants, on the other hand, have not introduced any controverting evidence on this point. Moreover, the question of whether the congregational meeting to disaffiliate was void involves considerations of religious doctrine and policy and therefore is not subject to review by civil courts. *Jones v. Wolf*, 443 U.S. at 602, 99 S.Ct. at 3024.

Appellants' point of error three is overruled.

We need not address appellants' points of error five and six contending that the trial court erred *if* it based its judgment on an implied trust theory or on any violation of the "Pastoral Letter" because the judgment is otherwise supported by the trial court's deferring to the Presbytery's identification of the true congregation and then awarding the church property to that designated group. *Presbytery of the Covenant v. First Presbyterian Church of Paris, Texas*, 552 S.W.2d at 872. Moreover, even if the trial court erred as appellants contend, an erroneous conclusion of law does not require reversal when a proper judgment is rendered. TEX.R.CIV.P. 434. *Scholz v. Heath*, 642 S.W.2d 554, 559 (Tex. App.—Waco 1982, no writ).

■ Finally, the withdrawing faction argues in its fourth point of error that the trial court erred in awarding the church property to "Casa Linda Presbyterian Church, Inc.," a name or entity not shown to be entitled to such property under any theory of record. Although such an organization does not exist in the present case, a misnomer does not invalidate a judgment as between parties where the record and judgment together point out, with certainty, the persons and subject matter to be bound. *Mattocks v. Lloyd Oil Corp.*, 45 S.W.2d 440 (Tex.Civ.App.—Austin 1932, writ ref'd). The withdrawing faction's fourth point of error is overruled.

■ When the judgment reflects a clerical variance between the judgment rendered and the evidence and pleadings, the appellate court is empowered to modify the judgment to correct the mistake. TEX.R. CIV.P. 435. *See Catlett v. Catlett*, 630 S.W.2d 478, 483 (Tex.App.—Fort Worth 1982, writ ref'd n.r.e.); *Soto v. Doehne*, 625 S.W.2d 60, 64 (Tex.App.—San Antonio 1981, no writ). Accordingly, we modify the judgment to decree title in the Casa Linda Presbyterian Church of Dallas, Texas.

As modified, the judgment is affirmed.