**Homer GREEN and Joe Ross, Sr., Appellants,**

v.

**WESTGATE APOSTOLIC CHURCH, et al., Appellees.**

**No. 3–90–145–CV.**

Court of Appeals of Texas, Austin.

April 10, 1991.

Rehearing Overruled June 5, 1991.

Will Hampton, Hampton & Kanak, Austin, for appellants.

Diana K. Borden, McGinnis, Lochridge & Kilgore, Austin, for appellees.

Before CARROLL, C.J., and JONES and SMITH, JJ.

SMITH, Justice.

Westgate Apostolic Church ("Westgate"), a local assembly affiliated with the United Pentecostal Church International, Inc. ("UPCI"), sought declaratory relief and an injunction against Rev. Homer Green, the former pastor of the church, and his supporter, Joe Ross, Sr. Defendants counterclaimed for injunctive and declaratory relief and damages. The trial court declared that Westgate had affiliated with UPCI, which had characteristics of a hierarchical church; that Rev. Green had resigned as pastor of Westgate on May 7, 1989, and since then the church had been without a pastor; and that all business conducted at a special meeting on September 9, 1989, was void because contrary to the church bylaws. The court enjoined Rev. Green and his followers from using the church premises or funds and from interfering with church services or business meetings. We will affirm the district court's judgment.

### Background

In 1959 a local church, South Austin United Pentecostal Church, affiliated with the United Pentecostal Church International, Inc. As required for affiliation, the local assembly adopted the UPCI articles of faith and the general constitution.[1] The local assembly, in its discretion, also adopted the bylaws suggested by UPCI for local church government.[2] In 1970 the lo-

---

1. We will cite to pertinent sections of the UPCI general constitution and the rules for local church government as set forth in the 1989 UPCI Manual ("Manual"). The Manual uses the terms "constitution" and "bylaws" interchangeably. In this opinion we will refer to the general constitution as the "general bylaws," and to the constitution governing local church government as the "local bylaws."

2. "Each local assembly so affiliated has the right of self-government under Jesus Christ, the Head of the Church. It shall have the power to select its pastor according to the form of local church government it has adopted and which was approved by the District Board at the time of its affiliation."
General Bylaws art. XIX, § 1, Preamble, Manual at 100. The local bylaws set forth in the lo-

cal church incorporated under the then applicable provisions of the Texas Non–Profit Corporation Act, Tex.Rev.Civ.Stat.Ann. art. 1396–1.01 to –11.01 (1980 & Supp.1991). The local church, now known as Westgate Apostolic Church, Inc., owns real property enhanced by a church building and an educational complex. The dispute that arose between two factions of Westgate members included a controversy over ownership of this property; it is the property controversy that confers jurisdiction on the courts of this state to resolve their dispute. *See Watson v. Jones*, 80 U.S. (13 Wall.) 679, 714, 20 L.Ed. 666 (1871).

▆ Rev. Green became the pastor of Westgate on May 18, 1982. On May 7, 1989, faced with allegations of conduct unbecoming a minister, Rev. Green appeared at a church meeting and resigned the pulpit. Almost immediately, Rev. Green had second thoughts about resigning and, encouraged by his supporters, he began his efforts to regain the Westgate pulpit.[3]

The local bylaws Westgate adopted in 1959 prescribe certain procedures for the selection of a new pastor in the wake of a resignation. Much of the authority formerly vested in the local pastor transfers to the district superintendent, who must convene and preside over any church meeting at which a pastor is to be selected or any other business is to be transacted. Local Bylaws art. III, § 5(3), Manual at 111. The

district superintendent and the church board must recommend the candidate for pastor, who additionally must receive a majority vote of the local members. Because of the pending allegations of immoral conduct against Rev. Green, neither the district superintendent nor the existing church board would recommend that he resume his duties as pastor of Westgate.

Frustrated by the district superintendent's refusal to call a meeting to reinstate him as pastor and believing that a majority of the church members wanted him back, Rev. Green began to hold services and meetings with Westgate members, in violation of UPCI bylaws requiring any resigning pastor to sever all connections with a former church. General Bylaws art. VII, § 7(6), Manual at 38.

Unable to regain the position of pastor under the existing local bylaws, Rev. Green announced his intention to hold a business meeting on June 24, 1989, at which the local assembly would consider disaffiliating from UPCI.[4] Appellees, the church board members serving at the time of Rev. Green's resignation,[5] brought this suit in the name of Westgate Apostolic Church and obtained a temporary restraining order to enjoin the June meeting called by appellants, Rev. Green and Joe Ross, Sr., one of Green's supporters. After the temporary restraining order expired, the court denied appellants' and appellees' opposing motions

---

UPCI manual are optional; local assemblies affiliated with UPCI may elect any other form of local government not in conflict with the articles of faith and the general bylaws, provided it has the approval of the UPCI district board. Westgate adopted the suggested local bylaws set forth in the UPCI Manual at the time it affiliated in 1959.

3. Rev. Green later contended that although he had "tendered" his resignation to the local assembly, the members never formally "accepted" it, therefore the resignation was ineffective. However, in May and June of 1989, he accepted the thirty-days' tithe provided as compensation to ministers who have resigned. For the reasons discussed in our opinion Rev. Green has waived any argument that his resignation was not effective on May 7, 1989.

4. Westgate would have had to change its bylaws to disaffiliate. However, the existing local by-

laws prohibit any change in bylaws, membership rolls, or officers while a church is without a pastor. Local Bylaws art. III, § 3(3)(d), Manual at 110.

5. Before this suit, Westgate loosely followed the local bylaws by appointing a single board of "trustees" to act as its governing board. The local bylaws call for designation of two entities: (1) a church board appointed by the pastor and endorsed by the local assembly for a one-year term to aid the pastor in conducting the business affairs of the church; and (2) a board of trustees elected by the majority of the local assembly to serve until successors are chosen. The board of trustees holds all church property in trust for the local assembly. Local Bylaws art. III, §§ 5–6, Manual at 111. Rev. Green testified that he referred to appellees as trustees, although they functioned as church board members. In this opinion we refer to appellees as church board members.

for temporary injunctions and urged the two factions to compromise over use of the church facilities pending final hearing in this matter.

Appellants next looked to corporate law for relief. Relying on a provision allowing ten percent of the members of a non-profit corporation to call a special meeting, Tex. Rev.Civ.Stat.Ann. art. 1396–2.10(A)(3) (1980), appellants called a church meeting on September 9, 1989. The members present removed appellees as church board members and trustees, elected new church board members and trustees, and reinstated Rev. Green as pastor. The members present also voted to dismiss this lawsuit. The district superintendent attended and pronounced the meeting unconstitutional.[6] Following this meeting, both factions continued using the church facilities, each calling themselves the duly authorized church.

In a bench trial in December 1989, appellees asked the court to declare that Rev. Green had resigned May 7, 1989, after which Westgate had no pastor; that UPCI had certain characteristics of a hierarchical church, subjecting members of Westgate to the church bylaws they had adopted; and that all actions taken at the September 9, 1989, meeting were null and void because contrary to these bylaws. Appellees additionally asked for an injunction prohibiting Rev. Green from interfering with church meetings or services. Appellants asked the court to characterize Westgate as an essentially congregational church, subject to no higher authority than the majority will of its members, and to uphold the actions taken by a majority of the members attending a meeting on September 9, 1989. Appellants also sought injunctive relief and brought counterclaims against the individual appellees.

The trial court declared that: (1) Westgate was affiliated with UPCI, which was a hierarchical church; (2) Rev. Green had effectively resigned as pastor on May 7,

1989, and Westgate had been without a pastor since that date; (3) after the resignation, the district superintendent had exclusive authority to preside over all business meetings at Westgate; (4) appellees constituted the duly authorized church board; and (5) all actions taken at the church meeting on September 9, 1989, were void because contrary to the church bylaws. The court enjoined appellants from using the church property or its funds and from interfering with church services or meetings. Appellants' counterclaims were denied.

In sixteen points of error, appellants challenge the trial court's determination that UPCI is a hierarchical church, that all actions taken at the September 9, 1989 meeting were void, and that appellees constitute the duly authorized church board. They further object to the injunctive relief imposed by the court and the denial of their own counterclaims.

## RESIGNATION OF REV. GREEN

First, we conclude that appellants have not sufficiently challenged the district court's finding that Rev. Green resigned as pastor of Westgate effective May 7, 1989. Because not contested by appellants, the court's finding that Rev. Green resigned is final and binding on this Court. *Schismatic & Purported Casa Linda Presbyterian Church v. Grace Union Presbytery, Inc.*, 710 S.W.2d 700, 707 (Tex.App.1986, writ ref'd n.r.e.), *cert. denied*, 484 U.S. 823, 108 S.Ct. 85, 98 L.Ed.2d 46 (1987). Additionally, there is factually sufficient evidence in the record to support the finding that, following his resignation, Rev. Green at no time served as Westgate's duly authorized pastor. Appellants' point of error nine is overruled.

## HIERARCHICAL CHURCH

■ In point of error number one, appellants complain that no evidence or insufficient evidence supports the finding that UPCI is a hierarchical church. At least one court has summarized the factors used

---

6. The meeting violated several local bylaws. First, the bylaws prohibit changes of church officers while the local church has no pastor. Local Bylaws art. III, § 3(3)(d), Manual at 110–111. Second, the district superintendent or a person designated by the superintendent must preside over a meeting to discuss church business, if the local church has no pastor. *Id.* § 5(3), Manual at 111. Third, a minister must have the recommendation of the district superintendent to be eligible for election as pastor. *Id.* § 2(1), Manual at 109.

by Texas courts to characterize a church as hierarchical: (1) affiliation of the local church with a parent church; (2) an ascending order of ecclesiastical judicaturies in which the government of the local church is subject to review and control by higher authorities; (3) subjugation of the local church to the jurisdiction of a parent church or to a constitution promulgated by the parent church; (4) a charter from the parent church governing the affairs of the local church and specifying ownership of local church property; (5) the repository of legal title; and (6) the licensing or ordination of local ministers by the parent church. *Templo Ebenezer, Inc. v. Evangelical Assemblies, Inc.*, 752 S.W.2d 197, 198–99 (Tex.App.1988, no writ).

The appellants argue that Westgate is not a hierarchical church because it does not embody all of the factors listed in *Templo Ebenezer*. We disagree. The terms hierarchical and congregational are poles on a continuum along which church organizations fall. The factors set forth in *Templo Ebenezer* merely aid the judiciary in determining whether a particular church is a congregational church, governed primarily by the will of the local assembly, or a hierarchical church, submitting certain issues to the rules and control of a larger religious organization. *See Watson*, 80 U.S. (13 Wall.) at 679; *Brown v. Clark*, 102 Tex. 323, 116 S.W. 360, 363 (1909).

Appellants emphasize the importance of majority rule in Pentecostal churches. Indeed, most business decisions are submitted to a majority vote when the local church has a presiding pastor. But when the church has no pastor authority shifts, in a hierarchical manner, to the UPCI district superintendent rather than to the membership of the local church. Local Bylaws art. III, § 5(3), Manual at 111.

Reviewing the evidence in the record in light of the factors characterizing a hierarchical church, we overrule appellants' complaint of no evidence. Appellants also challenge the factual sufficiency of this evidence in the same point of error. Westgate affiliated with a parent church, UPCI, and adopted its bylaws and articles of faith; under the general bylaws the local church submitted to the authority of the district council and general council of UPCI in certain matters of local government, especially in the selection of a new pastor once its pastor had resigned; Westgate relied on the authority of UPCI in licensing and ordaining its ministers and in reviewing complaints about the conduct of its ministers; indeed, Rev. Green himself recognized this authority by submitting to UPCI's judicial procedure to investigate the allegations against him. This evidence is factually sufficient to support the finding that UPCI is a hierarchical church. We overrule appellants' point of error one.

## MEMBERSHIP MEETING ON SEPTEMBER 9, 1989

■ After reviewing the general bylaws and all the other evidence, we must overrule appellants' second point of error, which complains of the trial court's finding that actions taken at the September 9, 1989, meeting were void. The evidence clearly supports the conclusion that those actions were contrary to Westgate's general and local bylaws. The district superintendent did not convene or preside over the meeting. The members elected Rev. Green as pastor without the recommendation of the district superintendent and dismissed the church board during a period when the local bylaws prohibited any change in church officers. All of these actions violate the Local Bylaws art. III, §§ 2(1), 3(3)(d) and 5(3), Manual at 109–111.

■ The trial court properly deferred to church bylaws governing the validity of the meeting. Appellate courts have consistently followed the deference rule in deciding hierarchical church property disputes since the Texas Supreme Court adopted the rule in *Brown*, 116 S.W. at 363. *Casa Linda Presbyterian Church*, 710 S.W.2d at 705. The deference rule imputes to members "implied consent" to the governing bylaws of their church: "Persons who unite themselves to a hierarchical church organization do so with 'implied consent' that church bylaws will govern subject only to overruling decisions based on fraud, collusion or arbitrariness." *Id.* at 703, citing *Watson*, 80 U.S. (13 Wall.) at 729. We overrule point of error two. We also overrule points of error four, eight and eleven, which relate to the void actions.

### Removal of Trustees for Cause

█ In point of error three, appellants challenge the finding that these church members had no right under the Texas Non–Profit Corporation Act to remove trustees for cause. Although appellants presented evidence that the power to remove a corporate officer is one necessarily incident to every corporation, there was sufficient evidence to support the trial court's contrary finding during a period when the local church had no pastor.

█ We do not deny that Westgate has rights under the Texas Non–Profit Corporation Act, but we affirm the trial court's determination that Westgate affiliated with a hierarchical church organization. In a conflict between the general procedures outlined in the Texas Non–Profit Corporation Act and the specific procedures contained in the church bylaws, we must defer to the church bylaws. The trial court properly found that the members could not invoke the Texas Non–Profit Corporation Act to remove the board of trustees in September of 1989.[7] *See Casa Linda Presbyterian Church,* 710 S.W.2d at 703; *Church of God in Christ, Inc. v. Cawthon,* 507 F.2d 599, 602 (5th Cir.1975). We overrule appellants' point of error three.

### AUTHORITY OF THE DISTRICT SUPERINTENDENT

█ We conclude that the evidence in this cause sufficiently supports the trial court's findings that the district superintendent had exclusive authority to preside over business meetings and that a new pastor needed the affirmative recommendation of both the superintendent and the church board. We further hold the evidence factually sufficient to support findings that the district superintendent and church board acted in accordance with church bylaws and did not misappropriate church funds. Related Points of error five, six, seven and ten are overruled. Contrary to the contention in point of error twelve,

the record clearly shows appellants had interfered with the services and business of the church without appellees' permission and that the trial court properly granted the injunctive relief requested by appellees. We therefore overrule point of error twelve. We overrule all remaining points of error as being without merit.

█ Finding that appellees constituted the duly authorized church board under the governing bylaws, the trial court properly awarded possession of the church property to them. Where a congregation of a hierarchical church has split, those members who renounce their allegiance to the church lose any rights in the property involved and the property belongs to the members who remain loyal to the church. It is a simple question of identity. Presbytery of the *Covenant v. First Presbyterian Church of Paris,* 552 S.W.2d 865, 871 (Tex.Civ.App. 1977, no writ), citing *Norton v. Green,* 304 S.W.2d 420, 424 (Tex.Civ.App.1957, writ ref'd n.r.e.). The judgment of the trial court is affirmed.

---

7. Appellants rely on *Mangum v. Swearingen,* 565 S.W.2d 957 (Tex.Civ.App.1978, writ ref'd n.r. e.), a case involving an incorporated church. In *Mangum,* the court stated in dictum the proposition that the power to remove a corporate offi-

cer is one necessarily incident to every corporation. *Id.* at 959. Appellants' reliance is misplaced; the court's statement is only dictum, and the *Mangum* controversy involved a concededly congregational church.