Reversed and Remanded and Opinion filed March 30, 2004









Reversed and Remanded and Opinion filed March 30,
2004.

 

 

In The

 

Fourteenth Court of Appeals

____________

 

NO. 14-02-01077-CV

____________

 

WILLIAM
LACY, INDIVIDUALLY AND AS REPRESENTATIVE OF WILLIAMS TEMPLE CHURCH OF GOD IN
CHRIST, INC., Appellant

 

V.

 

ROLAND
BASSETT AS ADMINISTRATIVE MANAGER OF 

WILLIAMS TEMPLE CHURCH OF GOD IN CHRIST, INC., 

RUFUS KYLES, JR., DEBRA TAYLOR, DARLYNN TAYLOR, AND 

WILLIAMS TEMPLE CHURCH OF GOD IN CHRIST, INC., Appellees

 



 

On Appeal from the 270th District Court

Harris County, Texas

Trial Court Cause No. 02-21893

 



 

O P I N I O N








In this case we are called upon
to examine the application of the Texas Non-Profit Corporation Act[1]
to a church member=s request
for access to church financial records. 
The trial court dismissed William Lacy=s suit
against the Williams Temple Church of God in Christ, Inc. (AChurch@), its
bishop, and other church personnel (collectively Aappellees@) based
upon the ecclesiastical doctrine.  On
appeal, Lacy asserts the trial court erred in concluding the doctrine precluded
his request to examine the church=s
records.  We reverse and remand.

I.  Facts and Procedural Background 

Lacy, a member of the Church,
made a written request through his attorney to examine and copy some of the
Church=s
financial records.  Lacy made the request
pursuant to the Act.  Initially, the
Church agreed Lacy could examine and copy the requested records; however, prior
to the date Lacy was to inspect the records, Rufus Kyles, the Church=s bishop,
sent Lacy a letter advising him that the Church could not comply with his
request.  Bishop Kyles=s letter
stated further, AYour requests
to review and/or copy the >Documents= is [sic]
denied.@ 

Lacy filed a declaratory judgment
action against appellees, alleging violations of the Act, breach of fiduciary
duties, and breach of the parties=
agreement regarding review of the records. 
Appellees filed a joint motion to dismiss on the basis that the court
was without subject matter jurisdiction because the court would be required to Ainvolve
itself in matters of ecclesiastical governance.@  The trial court granted the motion and signed
an order dismissing Lacy=s
claims.  This appeal ensued.    

II.  Standard of Review 








The Church=s motion
to dismiss is the functional equivalent of a plea to the jurisdiction.  Anderson v. City of San Antonio, 120
S.W.3d 5, 7 (Tex. App.CSan Antonio
2003, pet. denied).  A plea to the
jurisdiction challenges the trial court=s
authority to determine the subject matter of a cause of action.  Bland Indep. Sch. Dist. v. Blue, 34
S.W.3d 547, 554 (Tex. 2000).  Subject
matter jurisdiction raises a question of law, which we review de novo.  See Mayhew v. Town of Sunnyvale, 964
S.W.2d 922, 928 (Tex. 1998).  In deciding
a plea to the jurisdiction, a court must not weigh the claims= merits
and should consider only the plaintiff=s
pleadings and the evidence pertinent to the jurisdictional inquiry.  County of Cameron v. Brown, 80 S.W.3d
549, 555 (Tex. 2002).

When considering a trial court=s order
on a plea to the jurisdiction, we construe the pleadings in the plaintiff=s favor
and look to the pleader=s
intent.  Id. If a plaintiff fails
to plead facts establishing jurisdiction, but the petition does not
affirmatively negate jurisdiction, the issue is one of pleading sufficiency and
the plaintiff should be afforded the opportunity to amend.  Id. 
However, if the pleadings affirmatively demonstrate a lack of
jurisdiction, a plea to the jurisdiction may be granted without allowing the
plaintiff an opportunity to amend.  Id.


III.  Analysis








In two issues, Lacy asserts the
trial court erred in dismissing his suit for lack of subject matter
jurisdiction based upon the Aecclesiastical
doctrine.@[2]  Under the doctrine, the First Amendment forbids courts from
inquiring into religious doctrine, beliefs, or principles to resolve disputes
over church property, polity, or administration.  See Williams v.
Gleason, 26 S.W.3d 54, 58 (Tex. App.CHouston
[14th Dist.] 2000, pet. denied); Dean v. Alford, 994 S.W.2d 392, 395 (Tex. App.CFort Worth 1999, no pet.).  Lacy argues that neither his
request for a declaratory judgment to determine his statutory rights under the
Act nor his contract claim require the court to resolve a dispute involving
religious doctrine and practice; therefore, his claims do not implicate the
ecclesiastical doctrine.[3]  He also contends that if a conflict exists
between the Act and the First Amendment, it is a constitutional question, not a
jurisdictional issue.  

In the trial court, and on
appeal, appellees contend that Lacy=s claims
require the court to involve itself in matters of ecclesiastical
governance.  Thus, we examine application
of the ecclesiastical abstention doctrine to the circumstances of this case.      

A.  Ecclesiastical Abstention Doctrine

The First Amendment of the United
States Constitution, applied to the states through the Fourteenth Amendment,
provides: ACongress shall make no law
respecting an establishment of Religion, or prohibiting the free exercise
thereof.@  U.S. Const.
amends. I, XIV.  This provision mandates
that government and religion remain separate, forbidding the government from
interfering with the rights of hierarchical religious bodies to either establish
their own internal rules and regulations or create tribunals for adjudicating
disputes over religious matters.  Williams,
26 S.W.3d at 58; Tran v. Fiorenza, 934 S.W.2d 740, 743 (Tex. App.CHouston
[1st Dist.] 1996, no writ) (citing Serbian E. Orthodox Diocese v.
Milivojevich, 426 U.S. 696, 708B09, 724B25
(1976)).

Following this constitutional
mandate, under the ecclesiastical abstention doctrine, civil courts may not
intrude into the church=s
governance of religious or ecclesiastical 
matters, such as theological controversy, church discipline,
ecclesiastical government, or the conformity of members to standards of
morality.  See Williams, 26 S.W.3d
at 58; Dean, 994 S.W.2d at 395; Tran, 934 S.W.2d at 743.  In addition, courts should not involve
themselves in matters relating to the hiring, firing, discipline, or
administration of clergy.  McClure v.
Salvation Army, 460 F.2d 553, 558 (5th Cir. 1972); Dean, 994 S.W.2d
at 395; Tran, 934 S.W.2d at 743. 
The relationships between an organized church and its ministers are
considered a church=s Alifeblood@ and
matters involving those relationships are recognized as Aof prime
ecclesiastical concern.@  McClure, 460 F.2d at 558B59; Dean,
994 S.W.2d at 395.  








Nevertheless, acknowledging that
churches, their congregations, and hierarchy exist and function within the
civil community, they can be as amenable to rules governing civil, contract, or
property rights as any other societal entity. 
Dean, 994 S.W.2d at 395 (A[C]ourts
do have jurisdiction to review matters involving civil, contract, or property
rights even though they stem from a church controversy.@); Tran,
934 S.W.2d at 743 (citing to Watson v. Jones, 80 U.S. (13 Wall.) 679,
732B33
(1871)).  Therefore, a state may adopt an
approach, including neutral principles of law, for resolving church disputes
that do not involve consideration of doctrinal matters.  Hawkins v. Friendship Missionary Baptist
Church, 69 S.W.3d 756, 758B59 (Tex.
App.CHouston
[14th Dist.] 2002, no pet.) (citing Jones v. Wolf, 443 U.S. 595, 604
(1979)).  Under such an approach, a court
may interpret church documents in purely secular terms without relying on
religious precepts in resolving the conflict. 
Id.  If an issue cannot be
determined without resolving a religious controversy, a court must defer to the
resolution of the doctrinal issue by the authoritative ecclesiastical
body.  Id.  Often, however, the difficulty arises in
determining whether a particular dispute is Aecclesiastical@ or
simply a civil law controversy in which church officials happen to be
involved.  Tran, 934 S.W.2d at
743.  To resolve the question, courts must
look to the Asubstance and effect of a
plaintiff=s complaint to determine its
ecclesiastical implication, not its emblemata.@  Id.; see also Williams, 26
S.W.3d at 59 (stating the substance and effect of plaintiff=s
petition must be examined to determine its Aecclesiastical
implication@).








In the trial court, Lacy sought
an order declaring and enforcing the parties=
agreement and declaring their respective rights under the Act.[4]  The Act provides that a non-profit
corporation must keep Acorrect
and complete books and records of account,@ and a
member of that non-profit corporation has the right Aon written
demand stating the purpose of the demand . . . at any reasonable time, for any
proper purpose@ to examine and copy those books
and records relevant to that purpose, at the member=s
expense.  Tex. Rev. Civ. Stat. Ann. art. 1396-2.23. Lacy asserts that
as a non-profit corporation incorporated under the Act, the Church and the
other appellees[5]
are required to maintain books and to make them available to its members.

 

Appellees argue that the Church=s
maintenance and disclosure of its financial records is a matter of internal
ecclesiastical governance, reasoning that because the bishop decides when
disclosure is appropriate, it is an ecclesiastical matter.[6]
In support of their
argument, appellees cite to Hawkins v. Friendship Missionary Baptist Church.  In Hawkins, this Court examined
whether the trial court had subject matter jurisdiction over a dispute
involving a church; however, we framed the issue as one involving Aan
ecclesiastical matter relating to the firing of a minister.@[7]  69 S.W.3d at 758.  Further, we described the dispute in that
case as a Apower struggle between
the Church, Deacons, and Pastor@ which
could not be resolved based only on neutral principles of law, but required Adelving
into religious doctrine or polity.@  Id. (emphasis added).  Here, we are not presented with those types
of issues.[8]  In the case before us, we are not confronted
with issues regarding the Church=s
relationship with its clergy, nor any consequent power struggle.[9]  Instead, Lacy seeks access to the church=s
financial records under the provisions of the Act, a neutral principle of law.

Appellees urge us to find that
Lacy=s request
to review the books in accordance with the Act involves religious or
ecclesiastical matters.  We do not interpret Lacy=s request as involving any religious
doctrine or precept.  Resolution of the
dispute does not require that we intervene in the hiring, firing, discipline,
or administration of the Church=s clergy, nor that we address the conformity of members to
the Church=s standards of morality, or any other
matters traditionally held to involve religious doctrine.  Further, we are not being called upon to
interpret any Church constitution, by-laws, or other governing documents.  In fact, there are no documents in the record
indicating how or by whom the Church is governed.  Moreover, we are not asked to decide matters
relating to the hierarchical or congregational nature of the Church.

Lacy does not cite nor has our
research revealed any Texas case squarely addressing the issue before us.  Courts in other jurisdictions however have
addressed similar disputes and those decisions are instructive here.  In Bouregois v. Landrum,[10]
the Louisiana Supreme Court specifically examined Awhether
the First Amendment protects a church organized under a state=s
non-profit corporation law from the enforcement in civil court of a . . .
member=s
statutory right to examine the records of the corporation.@[11] 396 So.
2d 1275, 1276 (La. 1981).  There, the
trial court had ruled it lacked jurisdiction to hear the matter and the
appellate court affirmed, holding that Asince the
matter at issue is not a dispute over property rights but possible dissension
regarding church management, courts lack jurisdiction to intervene.@  Id. 
The Louisiana Supreme Court reversed, however, noting that Aregardless
of whether the . . . case may be classified as a property dispute, the
underlying First Amendment principles, which protect against entanglement of
civil courts in questions of religious doctrine, polity[,] or practice, are not
offended by the judicial enforcement of a statute requiring a church, as a non-profit
corporation, to keep at its registered office, corporate records for
examination by its voting members.@  Id. at 1277.  Likewise, in Watson v. Christie, a New
York appellate court affirmed the trial court=s
decision allowing a church member to inspect the church=s
financial records pursuant to that state=s
Not-for-Profit Corporation Law.  732
N.Y.S.2d 405, 406 (App. Div. 1st Dep=t 2001); see
N.Y. Not-for-Profit Corporation Law ' 621
(McKinney 1997).[12]  The court concluded that the church=s First
Amendment rights were not violated by inspection of its records because the
questions involved were not concerned with internal ecclesiastical or religious
issues, but only secular ones.  Watson, 732 N.Y.S.2d at 407.  We agree.

By incorporating under the Act,
the Church has become amenable to the provisions of that statute. The trial
court was merely called upon to uphold the plain language of the Act[13]
and ensure Lacy was allowed access to the Church=s books
and records in accordance with the statute. 
This judicial function does not jeopardize the ability of religious
organizations to establish religious doctrine or develop their internal rules
and regulations, nor does it implicate secular interests in purely
ecclesiastical matters; therefore, First Amendment principles are not
offended.  See Bouregois, 396
So.2d at 1278; Watson, 732 N.Y.S.2d at 407.  We find Lacy=s request to review the Church=s records merely requires the trial
court to enforce a neutral principle of law. 

We acknowledge, as appellees
argue, that a dispute may arise regarding the Church=s finances
should Lacy be allowed access to its records; however, the issue now before us
cannot be resolved based upon what may happen.  The trial court dismissed Lacy=s claims
for lack of subject matter jurisdiction relying upon the ecclesiastical
abstention doctrine.  Because under these
circumstances the court is not required to involve itself with any religious
doctrine or principles, we conclude the trial court erred in dismissing Lacy=s
declaratory judgment action and contract claim on the basis that it lacked
subject matter jurisdiction. 
Accordingly, we reverse and remand.[14]  

 

 

/s/        Eva M. Guzman

Justice

 

Judgment rendered and Opinion filed March 30, 2004.

Panel consists of Justices Edelman, Frost, and Guzman.

 

 











[1]  See Tex. Rev. Civ. Stat. Ann. art. 1396, '' 1.01B11.01 (Vernon 2003). 
All subsequent references to the AAct@ or Astatute@ are to
the Texas Non-Profit Corporation Act.    





[2]  The doctrine
is also referred to as the ecclesiastical abstention doctrine. See, e.g.,
Williams v. Gleason, 26 S.W.3d 54, 58 (Tex. App.CHouston [14th Dist.] 2000, pet. denied); Shea Sisk
Wellford, Note, Tort Actions Against ChurchesCWhat Protections Does the First Amendment Provide?, 25 U. Mem. L.
Rev. 193, 194 (1994).





[3]  On appeal,
Lacy does not assign any error to the trial court=s
dismissal of his breach of fiduciary duty claim and, presumably, has abandoned
that claim.  Therefore, we do not address
application of the ecclesiastical abstention doctrine to a breach of fiduciary
claim; however, we do note that at least one Texas appellate court has found
that such a claim necessitates the court=s
involvement with religious doctrine, requiring application of the
ecclesiastical doctrine.  E.g.,
Turner v. Church of Jesus Christ of Latter-Day Saints, 18 S.W.3d 877, 897B98 (Tex. App.CDallas
2000, pet. denied).       





[4]  We do not
address the extent to which documents should be made available to Lacy
under the Act or the merits of his claims; we merely determine whether the
trial court lacked subject matter jurisdiction due to the ecclesiastical
abstention doctrine.   





[5]  Roland Bassett
is the Church=s administrative manager, Debra Taylor its accountant,
and Darlynn Taylor its treasurer.  





[6]  The parties do
not dispute that the Church is a non-profit corporation, incorporated under
Texas law, nor that Lacy is a member of the Church.  Also, appellees do not contend that Lacy=s request failed to satisfy the constrictions of the
Act.   





[7]  In Hawkins, the
appelleesBthe church and the
chairman of its governing bodyBsought injunctive relief in the trial court to Aprohibit the Deacons . . .
from refusing . . . access to Church property and records.@  69 S.W.3d at 757.  They also argued that a determination of
which group had authority to make decisions within the church was a
non-ecclesiastical matter.  Id.  However, on appeal there was no issue
concerning the statutory right to examine records, but only whether
decision-making authority in the church, as between the parties, could be
decided under neutral principles of law. 






[8]  The appellees
cite to several other cases which they contend support their claim that Lacy=s request to examine the Church=s records is solely an ecclesiastical matter.  See, e.g., Milivojevich, 426 U.S. 696 (involving the defrocking of a
priest); McClure, 460 F.2d 553 (determining Title VII did not apply to
the Salvation Army but examining the case within context of church and its
relationship to its ministers); Dean, 994 S.W.2d 392 (addressing issues
within context of ouster of pastor); Mangum v. Swearingen, 565 S.W.2d
957 (Tex. App.CSan Antonio 1978, writ ref=d n.r.e.) (involving
expulsion of deacons and the church=s ability to determine its
membership).  However, in these cases the ouster of deacons or priests
was involved, an issue recognized as a purely ecclesiastical matter.  The facts of this case do not require us to
examine the church=s relationship with, or ability to govern, its clergy.






[9]  Appellees also rely on Green
v. Westgate Apostolic Church, 808 S.W.2d 547 (Tex. App.CAustin 1991, writ denied),
for the proposition that only a real property dispute conveys jurisdiction on a
court to hear a matter involving a church. 
However, as previously noted, courts have jurisdiction to review matters
involving civil, contract, or property rights even though they may stem from a
church controversy.  Dean, 994 S.W.2d at 395.  Moreover, in Green,
the appellate court acknowledged that the Act did impart rights on the members,
but the Act could not override the more specific hierarchical structure of the
church.  See id.  Here, there is no evidence in the record that
the requirements of the Act conflict with any provisions of the church=s bylaws.  





[10]  The plaintiffs, members of
the appellant church, filed suit against the church and its pastor for a court
order allowing them to examine the records which every non-profit corporation
was required to keep under Louisiana=s statute.  396 So. 2d 1275, 1276 (La. 1981).  The trial court ordered the church and its
pastor to permit the examination; however, plaintiffs were not satisfied they
had been allowed access to all of the records and served interrogatories on the
church.  Id.  Ultimately, the church filed an exception
based upon lack of jurisdiction, which the trial court sustained.  Id. 





[11]  Relative to
this appeal, Louisiana=s Non-Profit Corporation Act is similar to Texas=s Act, allowing access to the corporation=s records by members of the corporation.  See La.
Rev. Stat. Ann. ' 12:223 (West 2002). 






[12]  New York=s Not-For-Profit Corporation Law restricts a member=s access to only those financial statements for the
preceding fiscal year.  See N.Y.
Not-for-Profit Corporation Law ' 621(e).  However, in Watson the church=s by-laws permitted a broader inspection to its
members.  732 N.Y.S.2d at 407.  





[13]  See supra note
4.





[14]  Because of our conclusion on this
issue, we do not address Lacy=s remaining argument.